*Attorney Grievance Commission v. Samuel Sperling,* Miscellaneous Docket AG No. 6, September Term, 2019. Opinion by Biran, J.

**Attorney Discipline – Competence, Diligence, and Communication with Clients – Conduct Prejudicial to the Administration of Justice – Suspension.** A 120-day suspension is the appropriate sanction in a case in which an experienced personal injury attorney demonstrated a lack of competence, diligence, and communication in several instances while representing two individuals as plaintiffs in the same motor vehicle tort case. After moving for and receiving a deferral of dismissal of the clients' lawsuit, the attorney failed to take further steps to locate a service address for the defendant, leading to the dismissal of the case without prejudice. The attorney did not tell the clients that he had been unable to serve the defendant and that, as a result, the case was dismissed. In addition, the attorney failed to convey a settlement offer to the clients from the defendant's insurer. Further, the attorney failed to transmit one client's medical records to the insurer, which the insurer had asked to review for the purpose of evaluating settlement. Maryland Attorneys' Rules of Professional Conduct 19-301.1, 19-301.3, 19-301.4(a)(2) and (b), 19-308.4(a) and (d).

**Attorney Discipline – Aggravating Factors – Prior Disciplinary Offenses.** The Court took judicial notice of the attorney's prior public reprimand. In addition, the Court rejected the attorney's argument that his two prior disciplinary offenses could not be considered as aggravating circumstances in this case, because they involved different kinds of misconduct than alleged in this case, and because the sanctions were imposed after the attorney committed the acts that formed the basis for the violations in this case.

**Attorney Discipline – Collateral Estoppel and Res Judicata – Effect of Grant of Prior Petition for Reinstatement.** When the attorney petitioned for reinstatement to the Bar at the conclusion of his prior 90-day suspension in 2018, Bar Counsel objected to the petition, in part, on the ground that Bar Counsel needed to conduct further investigation of the complaints filed by the two clients in the motor vehicle tort case. In September 2018, this Court granted the attorney's petition for reinstatement over Bar Counsel's objections. In this case, the Court held that its prior grant of the attorney's petition for reinstatement was not a judgment on the merits of the current allegations. Thus, the doctrines of collateral estoppel and res judicata do not preclude the imposition of a sanction in this case.

**Attorney Discipline – Mitigating Factors – Timing of Grant of Petition for Reinstatement.** The Court held that the 39-day period between the end of the attorney's prior suspension period and the date of his reinstatement to the Bar was not a mitigating factor.

Circuit Court for Baltimore County
Case No. C-03-CV-19-002116
Argued: November 5, 2020

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 6

September Term, 2019

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SAMUEL SPERLING

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Biran, J.
Watts, Getty and Booth, JJ., dissent.

_____

Filed: March 1, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Respondent Samuel Sperling operates a solo law practice in Baltimore County, Maryland, known as The Sperling Firm, LLC. On June 11, 2019, the Attorney Grievance Commission of Maryland ("AGC" or the "Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("PDRA") against Mr. Sperling, alleging that Mr. Sperling violated several rules of professional conduct.[1] Bar Counsel alleged that, in connection with his representation of Ebony Boyd and Darius Bailey in 2016-18 as plaintiffs in the same personal injury matter, Mr. Sperling violated Rule 1.1 (competence); Rule 1.3 (diligence); Rules 1.4(a) and (b) (communication); Rule 1.6 (confidentiality of information); Rule 1.7 (conflict of interest); Rule 8.1(a) (knowing false statement of material fact in a disciplinary matter); and Rules 8.4(a), (c), and (d) (misconduct). Bar Counsel subsequently withdrew the allegation concerning Rule 1.6. After conducting an evidentiary hearing, the Honorable Jan M. Alexander of the Circuit Court for Baltimore County concluded that Mr. Sperling committed multiple rules violations.

Although we shall sustain several of Mr. Sperling's exceptions to the hearing judge's findings of fact and conclusions of law, we conclude that Mr. Sperling violated Rules 1.1, 1.3, 1.4(a)(2) and (b), and 8.4(a) and (d). For the reasons discussed below, we shall suspend Mr. Sperling from the practice of law for 120 days.

---

[1] At the beginning of the pertinent time period, these rules were part of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and codified in an appendix to Maryland Rule 16-812. Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified in Title 19 of the Maryland Rules. For ease of reference, we will use the shorter designations of the MLRPC – *i.e.*, Rule 1.1 in lieu of Maryland Rule 19-301.1. *See also* Md. Rule 19-300.1(22).

# I

## Background

### A. Mr. Sperling's Prior Professional Discipline

From the time Mr. Sperling was admitted to the Maryland Bar in 1996, until he formed his current firm in June 2014, Mr. Sperling worked for law firms owned by his father, Leonard Sperling. The last of these firms was known as The Sperling Law Office, P.C. (the "Sperling Law Office"). In 2013, this Court indefinitely suspended Leonard Sperling from the practice of law. *See AGC v. Sperling*, 434 Md. 658 (2013).

In 2016, the AGC, acting through Bar Counsel, filed a PDRA against Samuel Sperling and his brother, Jonathan Sperling, relating to professional misconduct that they allegedly committed while working at the Sperling Law Office. On May 21, 2018, we suspended Samuel Sperling for 90 days. *See AGC v. Sperling & Sperling*, 459 Md. 194, 281 (2018). Mr. Sperling's misconduct in that case involved his failure to safeguard funds in an attorney trust account and his failure to supervise Jonathan Sperling – a suspended attorney – at the Sperling Law Office. *See id.* at 212, 237-40, 244-49.[2]

Separately, on June 29, 2018, the AGC issued a public reprimand to Mr. Sperling in connection with his filing of a lawsuit in 2015 against a former client, in violation of Rule 1.7. The reprimand further recited that Mr. Sperling violated Rule 8.1(b) (knowing failure to respond to lawful demand for information from a disciplinary authority), and that Mr. Sperling's conduct described in the reprimand also violated Rule 8.4(d).

---

[2] With respect to Jonathan Sperling, we continued the indefinite suspension that we had previously imposed on him in 2013. *Sperling & Sperling*, 459 Md. at 282.

On August 10, 2018, with his 90-day suspension period almost concluded, Mr. Sperling filed a petition with this Court seeking reinstatement to the Bar of Maryland under Maryland Rule 19-751. By this time, Mr. Bailey and Ms. Boyd had filed complaints against Mr. Sperling with the AGC relating to his representation of them as plaintiffs in a motor vehicle tort case. In his petition for reinstatement, Mr. Sperling disclosed that Bar Counsel had requested he provide responses concerning Mr. Bailey's and Ms. Boyd's complaints.

Bar Counsel objected to Mr. Sperling's petition for reinstatement. In its filing, Bar Counsel asserted that Mr. Sperling had failed to provide information about his attorney trust accounts during the pendency of his suspension. In addition, Bar Counsel stated that Mr. Sperling was the subject of ongoing investigations relating to his representation of Mr. Bailey and Ms. Boyd. Bar Counsel provided the Court with details of what it claimed those investigations had revealed up to that point. Bar Counsel concluded by stating that additional investigation was necessary with respect to both the attorney trust account issue and the Bailey/Boyd complaints.

On September 5, 2018, Mr. Sperling filed a response to Bar Counsel's objections. On September 28, 2018, without holding a hearing, this Court granted Mr. Sperling's petition for reinstatement.

## B. Procedural History of This Case

After the AGC filed the current PDRA on June 11, 2019, under Maryland Rule 19-722(a) we designated Judge Alexander to conduct a hearing in accordance with Maryland Rule 19-727 concerning the alleged violations and to provide findings of fact and conclusions of law. Prior to the evidentiary hearing, Mr. Sperling filed a motion for

summary judgment based on the doctrines of collateral estoppel and res judicata. Mr. Sperling contended that this Court previously decided the issues raised by the PDRA when we granted Mr. Sperling's petition for reinstatement over the objections of Bar Counsel. On January 6, 2020, the circuit court held a hearing on Mr. Sperling's motion for summary judgment. At the conclusion of the hearing, the court denied the motion for summary judgment from the bench.

The evidentiary hearing concerning the PDRA went forward on January 22 and 23, 2020. Bar Counsel called three witnesses: Ms. Boyd, Mr. Bailey, and Deborah Friend, an employee of Maryland Automobile Insurance Fund ("MAIF"), the insurer of the at-fault driver in the accident, Lauren LaPlante. Mr. Sperling testified in his own defense. After concluding his testimony, Mr. Sperling sought to introduce expert testimony from H. Briggs Bedigian, an experienced Maryland personal injury attorney. The hearing judge excluded Mr. Bedigian's testimony, explaining, "I think I have a very good understanding of what happened here."

On April 17, 2020, the hearing judge issued an opinion containing his findings of fact and conclusions of law, as well as findings concerning aggravating and mitigating circumstances. Mr. Sperling filed exceptions to the hearing judge's findings of fact and conclusions of law and made several other claims of legal error. Mr. Sperling also excepted to the hearing judge's findings regarding aggravating factors and the hearing judge's failure to identify several mitigating factors. For its part, Bar Counsel asked us to note the existence of several aggravating factors that the hearing judge did not identify.

On November 5, 2020, we heard oral argument regarding these exceptions and the parties' recommendations as to an appropriate sanction.

## C. The Hearing Judge's Findings of Fact

The hearing judge stated his findings of fact as follows:

> Respondent was admitted to the Bar of the Court of Appeals of Maryland on June 5, 1996. Since admission to the Bar, respondent has engaged in the general practice of law and has been a solo practitioner in Baltimore County, Maryland since 2014.
>
> Ebony Boyd, Darius Bailey and Denise Davis were involved in a motor vehicle accident in Baltimore City, Maryland on January 8, 2016. Bailey was the driver of the vehicle in which Boyd and Davis were passengers. Said vehicle was rear-ended by a vehicle driven by Lauren LaPlante. LaPlante was insured with policy limits of $30,000.00 per person and $60,000.00 per accident, through Maryland Automobile Insurance Fund (MAIF). The accident resulted in minimal damage to the rear of Bailey's vehicle and all three occupants complained of bodily injuries. Boyd, who was ten weeks pregnant, and Bailey were seen in the emergency room of a local hospital for treatment of their injuries and it was determined that she had suffered a miscarriage.
>
> Boyd and Bailey retained Respondent on January 17, 2016, to represent them in their claims for damages pursuant to the accident. Each executed retainer agreements which provided for Respondent to be paid one-third of any recovery on a contingency basis. They also executed documents allowing for Respondent to receive their health information and to act as their Power of Attorney. There was no discussion of any potential conflict of interest in Respondent's representation of the parties.
>
> Respondent filed claims with MAIF on behalf of Boyd and Bailey on January 19, 2016. Boyd and Bailey received physical therapy treatment for their injuries through the months of January and February 2016 and notified Respondent when treatment had ended. On October 11, 2016, MAIF offered settlements of $500.00 each to Boyd and Bailey. After discussions with Respondent, both decided to reject the offers. Respondent filed suit on behalf of Boyd and Bailey in the Circuit Court for Baltimore City on January 8,

5

2017.[3] From February 14, 2017 until July 2, 2017, to no avail, Respondent attempted to perfect service upon LaPlante via certified mail return-receipt requested, and private process server. Unable to obtain service, Respondent filed and was granted a Motion to Defer Dismissal in the expectation that service would be obtained. However, on December 27, 2017, the Circuit Court issued a dismissal of the suit without prejudice as service had not been obtained.

Respondent received a ninety-day suspension from the practice [of law] by the Court of Appeals on May 21, 2018. *Attorney Grievance Commission v. Sperling & Sperling, 459 Md. 194, 185 A.3d. 76 (2018).* He advised MAIF of his suspension by way of a letter dated June 1, 2018. He also sent letters to Boyd and Bailey dated June 3, 2018, notifying them of his suspension. The letters characterized their cases as "pending" and made no reference to the dismissal that had been entered by the Circuit Court for Baltimore City. Boyd and Bailey went to Respondent's office on June 19, 2018 and retrieved their files discontinuing Respondent's representation of them. On July 19, 2018, Boyd and Bailey filed complaints against Respondent with the Attorney Grievance Commission.[4] The formal complaints were served on Respondent and written responses were requested. Written responses were filed by Respondent, essentially denying any malpractice. Respondent's final communication with Boyd and Bailey was via text message on December 31, 2018, advising them that the statute of limitations on their case would expire on January 8, 2019.

Upon hearing, this court finds the testimony of Ebony Boyd to be credible. She testified that she did not recall Respondent explaining the legal process involved in pursuing her claim through litigation or perfecting service against the at-fault driver, LaPlante. She also did not recall Respondent explaining why he demanded $75,000.00 in damages. She did recall that as of April, 2016, her communication with Respondent led her to believe that he was preparing to submit a demand package to MAIF to settle her case. Boyd sent text messages to Respondent on May 16, 2016 and June 13, 2016, inquiring about the status of her case. She further testified that she engaged in group communications about the case with Boyd and Denise Davis, the other passenger in the vehicle, because they all had a common

---

[3] The hearing judge's reference here to January 8, 2017 appears to be a typographical error. The complaint was filed on January 31, 2017.

[4] Ms. Davis did not file a Bar complaint against Mr. Sperling. Mr. Sperling resumed his representation of Ms. Davis in connection with the LaPlante car accident after he was reinstated to the Bar in September 2018.

interest in the outcome. In fact, a text message exchange between Boyd and Respondent revealed Respondent asking her for Bailey's phone number, since he had been unable to reach him. Respondent also advised her of a $500.00 settlement offer, which she rejected. She acknowledged that Respondent advised her that he had filed suit on her behalf. As well, she agreed that Respondent discussed with her, a November 20, 2017 meeting with MAIF, through a series of phone calls and text messages from November 22-29, 2017.

Boyd further testified that while Respondent was representing her, he made her aware that he had been suspended from the practice of law in June 2018, and acknowledged receipt of a letter from him informing her thereof. She went on to testify that he advised her of her right to seek new counsel and even provided her with a list of attorneys that he could recommend. However, she decided of her own accord not to proceed any further and authorized Bailey to retrieve her file from Respondent.

The court heard the testimony of Darius Bailey and also finds him credible. Bailey's testimony was consistent with that of Boyd, in that he communicated with Respondent mainly through text messages and phone calls. He discussed the $500.00 settlement offer with Respondent and agreed that Respondent should try to negotiate for more. Bailey described his phone calls with Respondent as "lots" and agreed that there were dozens of them. Further, he agreed that the calls were always to discuss his case[.] He stated that Respondent either answered his calls or responded promptly, and kept him apprised of the status of his case. However, he was never informed that MAIF had increased the settlement offer to $750.00.

Bailey was aware of Respondent's suspension from the practice of law, having received a letter from Respondent to that effect. He chose to terminate Respondent's representation because of it. He knew that he could have taken his case to another lawyer, but decided that he was no longer interested in pursuing the claim.

This court finds credible the testimony of Deborah Friend, a MAIF supervisor who testified as to the communications between Respondent and MAIF relative to the Bailey and Boyd claims. She met with Respondent at MAIF's office on November 20, 2017 to discuss the claims and verify that all medical bills and other damages were included in his demand package. She was knowledgeable of communications between Respondent and the claim adjuster about settlement discussions, the impact of Boyd's miscarriage as well as the pending litigation and statute of limitations. Further, she testified that she advised Respondent of the need for Boyd's

7

medical records relative to her miscarriage and prior pregnancy, for the miscarriage to be considered as damages. This request was renewed November 29, 2017 by the adjuster. A March 12, 2018 letter from the adjuster, again requested the medical records. According to MAIF records, there was no response from Respondent and the records were never produced. She denied that Respondent requested and was given a current address for service on LaPlante during their November 20, 2017 meeting. She also testified that it would be contrary to MAIF policy to accept service on behalf of LaPlante. She also verified through records that MAIF communicated an additional offer to Respondent on April 14, 2017, to settle the two claims for $750.00 each. And, that even after the case had been dismissed without prejudice by the Circuit Court for Baltimore City, MAIF's file remained open as a "still viable claim".

Respondent testified credibly that he met with and was retained by Boyd and Bailey on January 17, 2016, to represent them in their claims for injuries pursuant to a motor vehicle accident. During his interview, he obtained personal, background and contact information for each client, insurance and other information relative to the at-fault driver, their accounts of, and other information relative to the accident, including photographs of the property damage. He also had them execute a contingent fee retainer agreement and releases for employment and medical information. He explained to them the expected processing of their claims and referred them to a physical therapy provider for treatment of their injuries. His testimony as to maintaining regular contact with them was somewhat supported by phone records, emails and text messages, but revealed significant lapses without explanation. In two instances, Respondent failed to promptly respond to text messages sent by Boyd on May 16, 2016 and June 3, 2016, requesting updates on the status of her case.

He further testified as to his contact with MAIF in the attempt to settle the cases. Some of his testimony was consistent with that of Deborah Friend. Demand letters were sent to MAIF on behalf of both clients. Emails admitted into evidence reflect ongoing settlement negotiations in September 2016 and again in November 2017. He recommended that Boyd and Bailey reject MAIF's offer to settle each case for $500 each. Respondent testified that he obtained Boyd's medical records relative to her miscarriage and prior pregnancy; however, he admitted that he did not submit them to MAIF.

The court does not find credible Respondent's testimony that he requested, and was given a note with LaPlante's current address by a MAIF representative. This assertion contradicts the more credible testimony of Friend that such activity would have been documented in the MAIF records,

which it was not. Unable to settle the case, Respondent informed Boyd and Bailey that he was filling suit on their behalf in the Circuit Court for Baltimore City. Respondent did not meet with Boyd or Bailey to discuss the contents of the complaint, nor did he send them copies thereof. Respondent testified as to his unsuccessful attempts to obtain service upon LaPlante, first by certified mail and then through private process. He further testified that he discussed the significance of lack of service with Boyd. This court did not find this aspect of Respondent's testimony credible, as it was in direct conflict with the testimony of Boyd. For the same reason Respondent's testimony that he discussed the Notice of Contemplated Dismissal with the clients is not viewed as credible. Respondent did file, and on September 19, 2017, was granted a Motion to Defer Dismissal until November 30, 2017. When further efforts to accomplish service failed, the complaint was dismissed without prejudice by the Circuit Court on December 27, 2017. Respondent testified that he informed Boyd and Bailey of the dismissal and discussed the meaning and significance with them. Again, this court finds such testimony to be in direct conflict with the credible testimony of Boyd and Bailey that Respondent never advised them of the dismissal and that they were under the impression that the case was active. Despite the dismissal of the case, MAIF continued to contact Respondent in attempts to resolve the matter, but emails, phone calls and voicemails to Respondent on January 9, 2018, March 12, 2018 and May 9, 2018 were not responded to.

Respondent testified that the Court of Appeals imposed a ninety-day suspension on him from the practice of law on May 21, 2018. In compliance therewith, he did mail letters to Boyd and Bailey, advising them of the suspension and offering them the option to either seek new counsel or resume his representation of their "pending" matters after the suspension had been lifted. He also sent a letter to the adjuster at MAIF, notifying her of the suspension and advising that he could take no further action until he had been reinstated to practice law. However, no evidence was presented that he ever notified MAIF that Boyd and Bailey had discontinued his representation of them.

(citations to the record omitted). We will discuss the evidence that the parties introduced at the hearing as necessary below.

**D. The Hearing Judge's Conclusions of Law**

Based on his findings of fact, the hearing judge concluded that Mr. Sperling violated several rules of professional conduct, as summarized below.[5]

*Rule 1.1 – Competence*

Rule 1.1 states that an attorney must "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The hearing judge concluded that Mr. Sperling violated Rule 1.1 for the same reasons he stated in his opinion with respect to Rules 1.3 and 1.4.

*Rule 1.3 – Diligence*

The hearing judge concluded that Mr. Sperling violated Rule 1.3, which requires attorneys to "act with reasonable diligence and promptness in representing a client," in three instances. First, after the circuit court granted the motion to defer dismissal, Mr. Sperling took no further steps to locate a service address for Ms. LaPlante, resulting in the circuit court dismissing the case without prejudice on December 27, 2017.[6] Second, Mr.

---

[5] The hearing judge concluded that Mr. Sperling did not violate Rule 1.7, which prohibits conflicts of interest, because the only claim that Ms. Boyd (and Ms. Davis) could bring for damages in connection with the accident was against Ms. LaPlante. Because Ms. Boyd and Ms. Davis had no potential claim against Mr. Bailey, the hearing judge concluded, Mr. Sperling was under no obligation to discuss a potential conflict of interest with the three clients before agreeing to represent them all in pursuing claims against Ms. LaPlante. Bar Counsel has not filed an exception to this conclusion of law.

[6] The hearing judge stated that this lack of diligence also demonstrated a lack of competence in violation of Rule 1.1.

Sperling never responded to MAIF's second settlement offer of $750 each for Ms. Boyd and Mr. Bailey, and never communicated that second offer to the clients.[7] Third, although Mr. Sperling obtained medical records relating to Ms. Boyd's prior pregnancy, which MAIF had requested on several occasions, he never provided those records to MAIF for its consideration in evaluating a settlement.

*Rules 1.4(a) and (b) – Communication*

The hearing judge concluded that Mr. Sperling violated Rule 1.4, which concerns attorney-client communication,[8] in several respects:

> Respondent never discussed the contents of the complaint with his clients. He never explained to them why he was seeking damages of $75,000.00. He never showed them the complaint; or provided them a copy thereof. He never discussed the legal process with them. He never advised them that the court had issued a Notice of Contemplated Dismissal due to a lack of service on the Defendant.

---

[7] The hearing judge stated that such inaction also constituted a lack of competence in violation of Rule 1.1.

[8] Rule 1.4 provides in pertinent part:
(a) An attorney shall:
…
(2) keep the client reasonably informed about the status of the matter;

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge found that Mr. Sperling's failure to communicate MAIF's second settlement offer to Ms. Boyd and Mr. Bailey also violated Rule 1.4, "depriving them of the opportunity to consider whether to accept or reject the offer."[9]

*Rule 8.1(a) – Bar Admission and Disciplinary Matters*

The hearing judge found that Mr. Sperling violated Rule 8.1(a), which prohibits an attorney from "knowingly mak[ing] a false statement of material fact" in connection with a disciplinary matter, when he wrote to Bar Counsel on August 9, 2018, that Ms. Boyd's and Mr. Bailey's lawsuit "was in the process of being fully and properly litigated." The hearing judge concluded that this statement was knowingly false because Mr. Sperling "knew that the case had been dismissed, albeit without prejudice" and because "he knew that he had been discharged by Boyd and Bailey." In addition, the hearing judge stated that, at the time Mr. Sperling included that statement in his written submission to Bar Counsel, the "case could not be 'fully and properly litigated' by Respondent, as he was under suspension."

*Rule 8.4 – Misconduct*

The hearing judge concluded that Mr. Sperling violated Rule 8.4(d), which states that it is "professional misconduct for an attorney to … engage in conduct that is prejudicial to the administration of justice":

> Respondent failed to communicate settlement offers to his clients and failed to notify them of the reason that their case had been dismissed. After his initial attempts were unsuccessful, he showed a lack of interest in procuring service on the Defendant, resulting in the dismissal of the case. Although he

---

[9] The hearing judge stated that this failure also demonstrated a lack of competence in violation of Rule 1.1.

had them in his possession, Respondent failed to supply his client's medical records to MAIF to review in contemplation of settlement. His response to inquiries from his clients and representatives from MAIF can be described as inconsistent, at best. . . . Respondent's written submission to Bar Counsel that the case was being "fully and properly litigated" was clearly untrue.

In his conclusions of law, the hearing judge did not explicitly discuss Rule 8.4(c),[10] which provides that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The PDRA alleged that Mr. Sperling "knowingly and intentionally misrepresented to his clients that the matter was still 'pending'" in the June 3, 2018 letters. In the course of discussing Rule 8.4(d), the hearing judge concluded that Mr. Sperling's characterization in his June 3, 2018 letters to Ms. Boyd and Mr. Bailey of their cases as "pending" was not the basis for the finding of a violation: "The court does not find Respondent's description to his clients that their case was 'pending' to be misleading. Despite the fact that the case had been dismissed without prejudice, the evidence revealed that MAIF still considered it to be an open matter, and the statute of limitations had not yet expired." We interpret this statement also as the hearing judge's conclusion that Mr. Sperling did not violate Rule 8.4(c) when he described the case as "pending" in his June 3, 2018 letters to Ms. Boyd and Mr. Bailey.

---

[10] The hearing judge also did not explicitly discuss Rule 8.4(a), which provides that it is professional misconduct for an attorney to "violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Given that the hearing judge concluded that Mr. Sperling violated several rules of professional conduct, the hearing judge necessarily also concluded that Mr. Sperling violated Rule 8.4(a).

13

However, in the section of his opinion discussing aggravating factors, the hearing judge stated: "The court further finds that Respondent was dishonest by not informing his clients of an increased settlement offer, and that [sic] the reason for the dismissal of their case before the Circuit Court for Baltimore City." We interpret this statement as the hearing judge's conclusion that Mr. Sperling violated Rule 8.4(c) when he failed to inform his clients of these matters.

### E. Aggravating and Mitigating Factors Found by the Hearing Judge

The hearing judge found one aggravating factor: prior discipline. As stated above, we interpret the hearing judge's statement in the aggravating factors section of his opinion that Mr. Sperling was "dishonest" as the finding of a Rule 8.4(c) violation, not the finding of the aggravating factor of dishonest or selfish motive.[11]

As for mitigating factors, the hearing judge stated:

> Nothing in the record suggests that Respondent acted with a selfish motive. In fact, Respondent received no compensation or financial benefit from this case. Through his testimony, Respondent did express remorse for the upset and inconvenience that he has caused his clients. Moreover, the record reflects letters from several religious leaders and members of the community reflecting their admiration and respect for Respondent; as well as the time, charity, and pro bono work that he has contributed.

---

[11] As noted immediately below, the hearing judge found as a mitigating factor the absence of a selfish motive. The recognized mitigating factor that includes absence of a selfish motive also speaks to the absence of a dishonest motive. *See, e.g.*, *AGC v. Conwell*, 462 Md. 437, 472 (2019) ("absence of a dishonest or selfish motive") (citations omitted). The hearing judge's explicit reference to Mr. Sperling's lack of a "selfish motive" in discussing mitigation reinforces for us that the hearing judge did not find the aggravating factor of "a dishonest or selfish motive," *see, e.g.*, *AGC v. Shuler*, 443 Md. 494, 506 (2015), but rather mistakenly placed his Rule 8.4(c) conclusion in the section of his opinion discussing aggravating factors.

14

## II

### Discussion

### A. Collateral Estoppel/Res Judicata

Mr. Sperling excepts to the hearing judge's denial of his motion for summary judgment based on the doctrines of collateral estoppel and res judicata. As Mr. Sperling notes, Bar Counsel raised the Boyd/Bailey issues contained in the current PDRA as part of its objections to Mr. Sperling's petition for reinstatement. Mr. Sperling argues that, because this Court granted Mr. Sperling's petition for reinstatement over Bar Counsel's objections, the AGC (acting through Bar Counsel) was precluded from pursuing the Boyd/Bailey issues in the PDRA. We disagree.

Res judicata, or claim preclusion, "restrains a party from litigating the same claim repeatedly and ensures that courts do not waste time adjudicating matters which have been decided *or could have been* decided fully and fairly." *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 107 (2005) (emphasis in original). Under the doctrine of collateral estoppel, or issue preclusion, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547 (1989) (internal quotation marks and citation omitted). In order for either of these doctrines to apply, there must have been a final judgment on the merits in the earlier action. *See Norville*, 390 Md. at 107; *National Union Fire Ins. Co. of Pittsburgh, PA v. The Fund for Animals, Inc.*, 451 Md. 431, 464 (2017).

15

Neither res judicata nor collateral estoppel applies in this case because our grant of Mr. Sperling's petition for reinstatement was not a final judgment on the merits of the AGC's allegations concerning Mr. Sperling's handling of the Boyd/Bailey personal injury matter. In reinstating Mr. Sperling over Bar Counsel's objections, we decided only that Mr. Sperling should be permitted to practice law while Bar Counsel continued its investigation of the issues Bar Counsel had noted in its objections to Mr. Sperling's petition for reinstatement.

As Mr. Sperling correctly stated in his petition for reinstatement, a pending Bar complaint is not an automatic bar to reinstatement under Maryland Rule 19-751.[12] However, it does not follow that, when we grant reinstatement of an attorney as to whom there is a pending Bar complaint, we conclude that there is no merit to the allegations contained in the complaint or that no sanction will be warranted if it is determined after further investigation and proceedings that the attorney committed the alleged additional professional misconduct. A contrary conclusion might result in our putting virtually all petitions for reinstatement on hold pending the resolution of existing Bar complaints. Mr. Sperling has benefitted from our willingness to allow him to practice law while Bar Counsel's investigation of the Boyd/Bailey complaints continued and while the allegations

---

[12] Under Maryland Rule 19-751(c)(3), an attorney who seeks reinstatement after serving a fixed suspension not exceeding six months must include in his or her petition for reinstatement a certification that, to the best of the attorney's knowledge, information, and belief, no complaints or disciplinary proceedings are currently pending against the attorney. This rule does not provide that an attorney who is the subject of a pending disciplinary complaint or proceeding (and who, therefore, is unable to certify that no complaints or disciplinary proceedings are currently pending against the attorney) is disqualified from petitioning for reinstatement.

16

contained in the resulting PDRA were considered by Judge Alexander and this Court. Indeed, in his petition for reinstatement, Mr. Sperling argued that the pendency of the Boyd/Bailey complaints "should not prevent his reinstatement to the practice of law." We reject Mr. Sperling's attempt to characterize our agreement with that proposition as a judgment on the merits of the allegations contained in the current PDRA.

## B. Exclusion of Expert Testimony

Mr. Sperling also excepts to the hearing judge's exclusion of Mr. Bedigian's proffered expert testimony. For the reasons discussed below, we overrule this exception.

Mr. Sperling sought to admit Mr. Bedigian's testimony as an expert regarding personal injury law and the ethics of "practicing plaintiff-side personal injury law." After conducting extensive voir dire of Mr. Bedigian, the parties addressed whether the hearing judge should admit the proffered expert testimony. Mr. Sperling's counsel noted that, under Maryland Rule 5-702, expert testimony is admissible if the court determines that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Mr. Sperling's counsel argued that Mr. Bedigian's testimony would be helpful "specifically because we are dealing with the issues of a personal injury case." Bar Counsel responded that they have no objection to experts being used in attorney grievance cases where appropriate, and noted that they "routinely call [experts] in immigration cases, bankruptcy cases, complex estate and trust cases, complex real estate cases, those types of cases." Bar Counsel stated "[t]he case here is none of those cases. This is … run of the mill."

The hearing judge then stated: "[W]ith all due respect to Mr. Bedigian, who I do believe is a good lawyer. He has appeared before me. He is a good lawyer. I don't think

that this is appropriate in this regard or appropriate to have expert testimony. I think I have a very good understanding of what happened here and I'm not going to allow the expert testimony in this regard."

Mr. Sperling's counsel then made an offer of proof to the hearing judge that Mr. Bedigian would have opined Mr. Sperling "represented Mr. Bailey and [Ms.] Boyd with the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Among other things, Mr. Bedigian would have testified that "when it came time to deal with the issue of the difficulties to serve [Ms. LaPlante], he gave the clients options, recommended a choice and that choice was the proper exercise of professional judgment." In addition, Mr. Bedigian would have opined that Mr. Sperling "kept the clients reasonably informed under the standards of care" and, specifically, that "the standard of practice does not require sending a complaint to the client. That it does not require you to ask your clients how much you are going to seek in damages in a complaint. And not necessarily required to tell clients that a [Rule 2-507] notice is required."

In his written opinion, issued almost three months after the evidentiary hearing, the hearing judge characterized his ruling as having excluded Mr. Bedigian's testimony "as being irrelevant," and then cited the portion of the record quoted above, which included his comment that he had "a very good understanding of what happened here."

We review the hearing judge's exclusion of Mr. Bedigian's testimony for abuse of discretion. *See, e.g.*, *Roy v. Dackman*, 445 Md. 23, 38-39 (2015); *Bomas v. State*, 181 Md. App. 204, 214-17 (2008) (reviewing trial court's exclusion of proffered expert testimony because it was "not helpful" for abuse of discretion). A trial court's "action in admitting or

18

excluding [expert] testimony will seldom constitute a ground for reversal." *Roy*, 445 Md. at 38-39.

Mr. Sperling contends the hearing judge erred by excluding the proffered expert testimony as irrelevant. However, notwithstanding the hearing judge's description of his ruling in his written opinion, we read the actual ruling at the hearing as excluding the proffered testimony because the hearing judge concluded it would not be helpful in understanding the issues before him. The hearing judge possessed the discretion to exclude the testimony after concluding that he already had a "very good understanding of what happened here." By that point, the hearing judge had heard the testimony of Ms. Boyd, Mr. Bailey, Ms. Friend, and Mr. Sperling. As discussed further below, the hearing judge's findings of fact depended in large part on credibility determinations that resolved disputed factual contentions in the witnesses' testimony. The hearing judge did not need to hear expert testimony to decide questions of credibility or pure questions of fact.[13]

Further, we agree with Bar Counsel that this case did not present matters of such complexity that the hearing judge needed to hear expert testimony to determine whether Mr. Sperling violated the rules of professional conduct. This case at its core concerned basic questions of attorney competence, diligence, and communication. After hearing the

---

[13] To the extent Mr. Bedigian's opinions were premised on Mr. Sperling's testimony that he gave his clients "options" concerning how to proceed after he was unable to effect service on Ms. LaPlante, it is clear that Mr. Bedigian's opinion would not have been helpful to the hearing judge. The hearing judge discredited Mr. Sperling's testimony that he "discussed the significance of lack of service" with Ms. Boyd. In addition, the hearing judge discredited Mr. Sperling's testimony that he discussed the Notice of Contemplated Dismissal issued under Rule 2-507(d) with the clients. In short, Mr. Bedigian's opinions on several points relied on factual premises that the hearing judge rejected.

testimony and reviewing the exhibits that collectively elucidated the facts concerning Mr. Sperling's performance in these areas, the hearing judge concluded that he had "a very good understanding of what happened here" and, for that reason, excluded Mr. Bedigian's testimony. Based on the record before us, we cannot conclude that this decision was an abuse of the hearing judge's broad discretion. *See AGC v. Hodes*, 441 Md. 136, 182 (2014) (a hearing judge "has broad discretion to determine evidence's relevance when considering its admission"); *AGC v. Miller*, 467 Md. 176, 203 (2020) (overruling attorney's exception to hearing judge's factual finding that adoption proceedings at issue did not contain novel or contested issues and that any finding on this point required expert testimony from a family law practitioner).

## C. Violations of the Rules of Professional Conduct

To the extent the parties have not excepted to the hearing judge's findings of fact, we treat those findings as established. Md. Rule 19-741(b)(2)(A). When a party excepts to a factual finding, we conduct an independent review of the record to ensure that the finding is supported by clear and convincing evidence. *Hodes*, 441 Md. at 168. Clear and convincing evidence "does not call for 'unanswerable' or 'conclusive' evidence. The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure – that is, it must be more than a mere preponderance but not beyond a reasonable doubt." *Id.* at 168 n.15. We have also explained that, in our review of the record, we generally accept the hearing judge's findings of fact unless they are shown to be clearly erroneous. *Id.* at 168-69. "A

20

hearing judge's factual finding is not clearly erroneous if there is any competent evidence to support it." *Id.* at 169 (quoting *AGC v. McDonald*, 437 Md. 1, 16 (2014)).

1. <u>Mr. Sperling's General Exceptions to the Hearing Judge's Findings of Fact and Conclusions of Law</u>

Mr. Sperling has stated two exceptions that apply generally to the hearing judge's findings of fact and/or conclusions of law. First, Mr. Sperling argues that, to the extent the hearing judge's findings are based on Ms. Boyd's and/or Mr. Bailey's testimony, those findings are defective because Ms. Boyd and Mr. Bailey could not remember many details of their interactions with Mr. Sperling from two to three years earlier. According to Mr. Sperling, these witnesses' testimony cannot constitute clear and convincing evidence upon which to base any findings adverse to Mr. Sperling. We disagree.

The hearing judge heard the testimony of Ms. Boyd and Mr. Bailey, including the searching cross-examinations conducted by Mr. Sperling's counsel, and found both Ms. Boyd and Mr. Bailey to be credible. Notably, both witnesses provided testimony that helped and hurt Mr. Sperling. We defer to the hearing judge's decision to credit Ms. Boyd's and Mr. Bailey's testimony over Mr. Sperling's testimony to the extent Mr. Sperling's testimony was in conflict with that of the complaining witnesses. *See* Md. Rule 19-741(b)(2)(B) (requiring this Court to "give due regard to the opportunity of the hearing judge to assess the credibility of the witnesses"); *Hodes*, 441 Md. at 181 (explaining that "[w]e generally defer to the credibility findings of the hearing judge" because "[t]he hearing judge is in the best position to evaluate the credibility of the witnesses and to decide

21

which one to believe and, as we have said, to pick and choose which evidence to rely upon") (internal quotation marks and citations omitted). Thus, we overrule this exception.

Next, Mr. Sperling contends that several of the hearing judge's findings of fact and conclusions of law are based on conduct that was not specifically alleged in the PDRA. In particular, Mr. Sperling complains that the PDRA did not allege that he violated the rules of professional conduct by: (1) failing to convey MAIF's second settlement offer to the clients; and (2) failing to provide Ms. Boyd's medical records to MAIF and failing to respond to communications from MAIF regarding such records.[14] According to Mr. Sperling, the hearing judge's findings of violations based on these allegations of misconduct violated his right to due process. We again disagree.

Mr. Sperling correctly observes that a hearing judge's findings must be "appropriately limited to charges filed by Bar Counsel through the [PDRA]," *AGC v. Sanderson*, 465 Md. 1, 32 (2019), and that this limitation "stems from procedural due process concerns." *Id.* "Particularly, this procedure is intended to ensure that an attorney is given fair notice of all of the charges filed against the attorney." *Id.* However, we have also stated that a PDRA "is a notice pleading that will be deemed sufficient so long as the petition informs the attorney of the misconduct charged in language which is clear and

_____

[14] Mr. Sperling also complains that the PDRA did not allege that he failed to discuss the contents of the complaint and the legal process with the clients. As discussed below, we sustain Mr. Sperling's exceptions to the hearing judge's conclusions of law on those points on their merits. Mr. Sperling also asserts that the PDRA did not allege that he failed to provide a copy of the complaint to the clients. This is incorrect. The PDRA did include that specific allegation. Regardless, we also shall sustain Mr. Sperling's exception on the merits of that allegation, as discussed below.

sufficiently specific to enable the attorney to prepare a defense. No specific form or detail is required to satisfy this threshold requirement." *McDonald*, 437 Md. at 43 (cleaned up). The attorney in *McDonald* "recite[d] a litany of facts" in the hearing judge's opinion that were not alleged in the PDRA filed in his case. *Id.* Nevertheless, we concluded that the PDRA in *McDonald* "was sufficient to put [the attorney] on notice of the charges against him." *Id.* at 43-44. We further noted that the attorney "point[ed] to no authority to support the proposition that every material fact relied on ultimately by the hearing judge from the admitted evidence must have been alleged in the Petition." *Id.* at 44. We commented that, in fact, "[t]here is no such authority, nor shall this opinion be the first of that kind." *Id.*

The argument that we rejected in *McDonald* fares no better in Mr. Sperling's case. Among other things, the PDRA alleged that there is no evidence that Mr. Sperling took any action to advance the case after January 2018. This allegation encompasses failing to provide medical records to MAIF and responding to MAIF's post-January 2018 communications.

In addition, the PDRA quoted text communications between Ms. Boyd and Mr. Sperling in which Mr. Sperling stated that the case was "in suit" because MAIF "offered $500 to each person," and that the reason the case was "taking this long" was not because the plaintiffs failed to make a police report on the day of the accident, but rather because MAIF "is cheap." This put Mr. Sperling on notice that his communications with the clients concerning MAIF's settlement offers were material to the allegations of misconduct. Further, it is undisputed that Bar Counsel provided Mr. Sperling with MAIF's "Claim Chronology" regarding the Boyd/Bailey/Davis lawsuit in discovery, which reflected that,

23

on April 14, 2017, a MAIF adjuster left a voice mail on Mr. Sperling's office line making a new settlement offer of $750 each for Ms. Boyd and Mr. Bailey. Moreover, Bar Counsel questioned Mr. Sperling about this second settlement offer in his pre-hearing deposition without objection, and Mr. Sperling also did not object to Bar Counsel's questions at the evidentiary hearing concerning the $750 settlement offers.

Mr. Sperling has not attempted to show how the omission of these specific allegations from the PDRA prejudiced his ability to mount a defense, and we discern no such prejudice upon our independent review of the record. For all these reasons, we overrule this exception.

2. <u>Mr. Sperling's Specific Exceptions to the Hearing Judge's Findings of Fact and Conclusions of Law</u>

Mr. Sperling has also stated several specific exceptions to the hearing judge's findings of fact and conclusions of law. We discuss each of these exceptions in turn.

*Violations of Rule 1.1 and 1.3*

The hearing judge found that Mr. Sperling violated Rule 1.1's competence requirement and Rule 1.3's diligence requirement by taking no further steps to locate a service address for Ms. LaPlante after the circuit court granted the motion to defer dismissal on September 22, 2017, and by failing to convey MAIF's second settlement offer to the clients and to respond to MAIF regarding that offer. In addition, the hearing judge found that Mr. Sperling violated Rule 1.3 by failing to provide Ms. Boyd's medical records to MAIF. Mr. Sperling disagrees with each of these conclusions.

### a. Failure to Attempt to Locate a Service Address for Ms. LaPlante

Mr. Sperling testified that he went to MAIF's office on November 20, 2017, in part, to determine if he "could actually get somebody to see if they had any information of the address for [Ms. LaPlante]." Mr. Sperling stated that after speaking with Ms. Friend on a phone in MAIF's lobby about Ms. Boyd's medical records, "a gentleman came out at some point and pulled up an address and gave it to me on a sticky," but it was the same address for Ms. LaPlante that Mr. Sperling had possessed since the beginning of the case and at which he had tried unsuccessfully to serve Ms. LaPlante. Mr. Sperling testified that he did not keep the "sticky" note that the MAIF employee gave him.

Ms. Friend testified that, on November 20, 2017, she received a call from MAIF's front desk that Mr. Sperling was in the lobby. Contrary to Mr. Sperling's testimony that the two spoke on the phone, Ms. Friend testified that she went to the lobby and had a short face-to-face meeting with Mr. Sperling. According to Ms. Friend, Mr. Sperling "just wanted to confirm that we had all of the medicals that he submitted with his demand." Ms. Friend testified that she also asked Mr. Sperling if he was going to link Ms. Boyd's miscarriage to the accident. According to Ms. Friend, Mr. Sperling replied in the affirmative, and she then told him that MAIF would need to see Ms. Boyd's prior OB-GYN records in order to further review the case. When questioned whether Mr. Sperling asked during the lobby meeting for a review of MAIF's file to determine whether or not MAIF had a current address for Ms. LaPlante, Ms. Friend answered, "Not that I recall," and indicated that "[i]t would have been in the chronology."

25

Consistent with Ms. Friend's testimony at the hearing, the MAIF chronology entry relating to Mr. Sperling's visit on November 20, 2017 recites that Mr. Sperling "wanted to confirm if we had all of the demand" and that Mr. Sperling "is now saying they are relating the miscarriage to this loss." The chronology does not reflect that Mr. Sperling requested Ms. LaPlante's last known address on November 20, 2017 (or any other date), or that anyone at MAIF provided that information to him.

The hearing judge found Ms. Friend's testimony to be credible. As for Mr. Sperling on this point, the hearing judge wrote in his findings of fact: "The court does not find credible Respondent's testimony that he requested, and was given a note with LaPlante's current address by a MAIF representative…. This assertion contradicts the more credible testimony of Friend that such activity would have been documented in the MAIF records, which it is not."

Mr. Sperling argues that the absence of an entry in the MAIF chronology showing that Mr. Sperling requested and received Ms. LaPlante's last known address is not clear and convincing evidence that Mr. Sperling did not make such a request and did not receive the "sticky" note with Ms. LaPlante's address on it. But Mr. Sperling cannot avoid the fact that the hearing judge heard and rejected his testimony about asking for and receiving Ms. LaPlante's last known address while at MAIF. We will not disturb this credibility determination. *See, e.g.*, *Hodes*, 441 Md. at 181. Nor can we say that the hearing judge erred in concluding that Mr. Sperling's failure to ask MAIF for Ms. LaPlante's last known address (or to take other steps to locate a service address for Ms. LaPlante after the circuit court deferred dismissal) demonstrated a lack of diligence and competence. Indeed, the

26

General Assembly has provided a statutory mechanism for attorneys in the position in which Mr. Sperling found himself. Upon written request by a plaintiff in a lawsuit against an insured, an insurance company must provide the plaintiff with the insured's "last known home and business addresses if known." Md. Code Ann., Cts. & Jud. Proc. (CJP) § 6-311 (2020 Repl. Vol.). After the circuit court deferred dismissal until November 30, 2017 to give Mr. Sperling additional time to locate and serve Ms. LaPlante, Mr. Sperling should have promptly submitted a written request to MAIF for Ms. LaPlante's last known address.[15] Mr. Sperling seemingly agrees that a reasonable attorney in his position should make such a request. Indeed, as discussed above, Mr. Sperling claims that he did ask MAIF for Ms. LaPlante's address when he visited MAIF's office on November 20, 2017. However, the hearing judge did not believe Mr. Sperling's testimony on that point.

Mr. Sperling alternatively argues that we should not focus on the September-November 2017 time frame with respect to attempts to serve Ms. LaPlante, but rather should consider all his efforts to serve Ms. LaPlante from the time he filed the lawsuit against her on January 31, 2017. According to Mr. Sperling, such a review demonstrates that, overall, he exercised diligence in trying to serve Ms. LaPlante.

It is undisputed that Mr. Sperling took several steps to try to serve Ms. LaPlante. He attempted to serve her by certified mail on February 14, 2017, and when that effort was unsuccessful, he employed private process servers in Maryland and Pennsylvania to

___

[15] It is difficult to understand why Mr. Sperling did not submit such a request to MAIF earlier in 2017, after his attempt to serve Ms. LaPlante by certified mail on February 14, 2017, was unsuccessful.

attempt personal service on Ms. LaPlante beginning on June 18, 2017. To that end, the Maryland process server conducted a "skip trace"[16] to attempt to find a better address for Ms. LaPlante. Both the Maryland and Pennsylvania process servers made unsuccessful attempts to serve Ms. LaPlante at addresses associated with her.

Putting aside the unexplained delay between the attempt to serve Ms. LaPlante by certified mail on February 14, 2017, and the first effort to effect personal service of Ms. LaPlante on June 18, 2017, we agree with the hearing judge that Mr. Sperling's efforts to serve Ms. LaPlante after September 29, 2017 – the date the circuit court granted Mr. Sperling's motion to defer dismissal – warrant independent scrutiny. It is undisputed that, as of November 20, 2017 (10 days before the deferred dismissal period was to end), Mr. Sperling had not made any request to MAIF for Ms. LaPlante's last known address. And the hearing judge found that Mr. Sperling did not request Ms. LaPlante's last known address during his visit to MAIF on November 20. Notably, CJP § 6-311 required such a request to be submitted in writing, not verbally. In any event, after the circuit court deferred dismissal of the lawsuit to give Mr. Sperling more time to try to serve Ms. LaPlante, it was not reasonable for Mr. Sperling to leave that stone unturned, given the ease with which he could have made a written request, and the statutory requirement that MAIF comply with such a request.

---

[16] "Skip-tracing is the process of developing new telephone, address, job or asset information" about a person. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1040 n.1 (9th Cir. 2012). Skip traces "can employ a wide variety of methods, ranging from basic online or public records searches to aggressive, in-person interviews with family and friends." *Sermuks v. Orion Caterers, Inc.*, 2017 WL 5714087, at *2 n.1 (E.D.N.Y. Nov. 28, 2017).

Notably, Mr. Sperling eventually was able to serve Ms. LaPlante after he refiled the lawsuit with only Ms. Davis as a plaintiff. Thus, it seems quite likely that if Mr. Sperling had approached service of Ms. LaPlante with greater diligence in 2017 – especially after the circuit court deferred dismissal to allow him to serve Ms. LaPlante – Ms. Boyd and Mr. Bailey would have been able to pursue their claims further.

For the above reasons, we overrule Mr. Sperling's exception and conclude that he violated Rules 1.1 and 1.3 when he failed to take additional steps to try to locate a service address for Ms. LaPlante after the circuit court deferred dismissal of the lawsuit.

### b. Failure to Convey or Respond to MAIF's Second Settlement Offer

The MAIF chronology reflects that, on April 14, 2017, a MAIF adjuster left a voice mail on Mr. Sperling's office line in which she made a settlement offer of $750 each for Ms. Boyd and Mr. Bailey. Ms. Friend testified about this entry during her testimony and confirmed that it showed MAIF had made a second offer on April 14, 2017, to Mr. Sperling to settle the clients' claims. It is undisputed that Mr. Sperling never conveyed a second settlement offer to Ms. Boyd or Mr. Bailey.

Mr. Sperling testified that he did not convey the second offer to his clients, or take any other action with respect to the offer, because he never received it. Mr. Sperling further testified that either he or his assistant usually picks up voice mails, and that he "pick[s] up [his] voice mails quite well." Thus, he speculated that the MAIF adjuster may have hung up before the message went through or that someone in his office may have accidentally deleted it when the person was picking up voice mails. He further suggested that, because

29

April 14, 2017 fell during the Passover holiday, "it is possible that there were a lot of messages and there was a mistake, technical error."

The hearing judge found that Ms. Friend "verified through records that MAIF communicated an additional offer to Respondent on April 14, 2017, to settle the two claims for $750.00 each." Having found that MAIF communicated the second settlement offer to Mr. Sperling by way of the adjuster's voice mail, the hearing judge concluded that Mr. Sperling violated Rules 1.1 and 1.3 when he failed to convey that offer to his clients and to provide a response to MAIF regarding the offer.

Mr. Sperling argues that the entry in MAIF's chronology that the adjuster left the voice mail communicating the second settlement offer does not constitute clear and convincing evidence that Mr. Sperling received the voice mail. In this regard, Mr. Sperling notes that Ms. Friend testified on cross-examination that she did know whether Mr. Sperling received any of the voice messages noted in the MAIF chronology.

However, the hearing judge did not have only the MAIF entry before him on this point. The hearing judge also heard Mr. Sperling's testimony that he did not receive the MAIF offer. While the hearing judge did not explicitly discredit that part of Mr. Sperling's testimony in his written opinion, it is clear from the hearing judge's conclusions of law that the hearing judge rejected Mr. Sperling's assertion that he did not have actual notice of the offer. In the aggravating factor section of his opinion, the hearing judge stated that Mr. Sperling was "dishonest by not informing his clients of an increased settlement offer." Although we conclude below that there is not clear and convincing evidence that Mr. Sperling violated Rule 8.4(c) in his handling of the second settlement offer, we have no

30

difficulty concluding that the hearing judge discredited Mr. Sperling's testimony that he did not know MAIF had made a second settlement offer.

Mr. Sperling contends that, "[w]hile the trial court could in theory have discredited the testimony of Respondent" that he did not receive the April 14, 2017 voice mail, "what the court could *not* do was infer the opposite was true, namely that by clear and convincing evidence Respondent did receive the voice mail without consideration of any other evidence." We do not disagree. *See Bereano v. State Ethics Comm'n*, 403 Md. 716, 746-47 (2008). However, the hearing judge did not rely solely on an adverse credibility determination to conclude that Mr. Sperling received the voice mail. The hearing judge also relied on the MAIF chronology, which contemporaneously noted that the adjuster had left the voice mail containing the second round of settlement offers. Based on the MAIF chronology, Mr. Sperling's testimony that he "picks[s] up [his] voice mails quite well," and the hearing judge's assessment of Mr. Sperling's credibility, the hearing judge could conclude under a clear-and-convincing-evidence standard that Mr. Sperling received the voice mail and neglected to convey the offer to his clients. Accordingly, we overrule Mr. Sperling's exception and hold that Mr. Sperling's failure to convey the second settlement offers to Ms. Boyd and Mr. Bailey constituted a lack of competence and a lack of diligence, in violation of Rules 1.1 and 1.3.

### c. Failure to Provide Ms. Boyd's Medical Records to MAIF

On November 29, 2017, Mr. Sperling had a telephone conversation with a MAIF adjuster in which the adjuster told Mr. Sperling that she would need to review OB-GYN records relating to Ms. Boyd's prior successful pregnancy. Those records were relevant to

31

MAIF's consideration of Mr. Sperling's contention that Ms. Boyd's miscarriage was related to the car accident caused by Ms. LaPlante. On January 9, 2018, the MAIF adjuster made an entry in MAIF's claim chronology noting that MAIF had not yet received prior medical records relating to Ms. Boyd. According to her entry, the adjuster also sent Mr. Sperling an email on January 9, 2018, requesting an update.

On January 31, 2018, an employee of Mr. Sperling emailed him: "You wanted me to order stuff from [J]ai [M]edical regarding [Ms. Boyd's] birth – u did not specify what exactly you need.. do you need the records from childbirth? – that would be from the hospital she gave birth at which I don't know where she went and what was the date? or are you looking for the ob visits she had? Or the baby records? Need to know exactly what your [sic] looking for and the dates so I can order for you to pick up or have them mail it." Approximately 15 minutes after the employee sent this email, Mr. Sperling texted Ms. Boyd and requested her child's date of birth for purposes of making a records request from Jai Medical Center ("Jai"). Ms. Boyd replied to Mr. Sperling's text on the same day and provided her child's date of birth (which was in 2013), as Mr. Sperling had requested. The record reflects that, almost one month later, on February 27, 2018, Mr. Sperling's office faxed a request to Jai for copies of Ms. Boyd's medical records between 2012 and 2013. On March 30, 2018, Jai informed Mr. Sperling's firm that Ms. Boyd's obstetrical records were located at the University of Maryland-Midtown Campus ("UMMC") (formerly Maryland General Hospital).

On April 11, 2018, Mr. Sperling's office faxed a request to UMMC for Ms. Boyd's medical records between 2012 and 2013. On April 12, 2018, UMMC issued a billing

32

invoice to Mr. Sperling's firm in the amount of $119.38 for 109 pages of records. Mr. Sperling paid for these records by way of a check dated April 13, 2018, in the amount of $119.38. UMMC's records list the invoice as having been paid on April 19, 2018. Mr. Sperling's firm subsequently received 109 pages of medical records relating to Ms. Boyd's 2013 childbirth that were printed out at UMMC on April 19, 2018.

Prior to his suspension, Mr. Sperling did not transmit these records to MAIF, nor did he respond to any of MAIF's follow-up communications regarding such records. Ms. Boyd testified that she did not know whether Mr. Sperling ever received her medical records. She also testified that she "didn't know what was going on with the case" at the point when Mr. Sperling informed her that he had been suspended. The hearing judge found that Mr. Sperling's failure to transmit Ms. Boyd's medical records to MAIF constituted a lack of diligence, in violation of Rule 1.3.

Mr. Sperling excepts to this conclusion, contending that he was "in the process of reviewing" Ms. Boyd's medical records "and strategically deciding how to utilize them" when he was suspended. However, there is no evidence in the record to support Mr. Sperling's contention. Mr. Sperling did not testify at the hearing that he consciously decided not to send Ms. Boyd's obstetrical records to MAIF prior to his suspension because he was still reviewing the records and "strategically deciding" how to use them. Moreover, Mr. Sperling never told Ms. Boyd that he had received the records from UMMC, let alone that he was in the process of reviewing them and deciding how best to use them to her advantage with MAIF.

33

We conclude that the record of Mr. Sperling's actions and inactions with respect to Ms. Boyd's medical records provides clear and convincing evidence of a lack of diligence. To begin with, it is difficult to understand why Mr. Sperling waited more than two months from MAIF's request to ask Ms. Boyd for her child's date of birth for purposes of requesting the pertinent medical records, despite an email from MAIF on January 9, 2018, asking Mr. Sperling for an update. After Ms. Boyd provided her child's date of birth to Mr. Sperling on January 31, 2018, almost another month went by before Mr. Sperling's firm requested any medical records. And, after Jai informed Mr. Sperling's office on March 30, 2018, that Ms. Boyd's obstetrical records were located at UMMC, Mr. Sperling's office waited almost another two weeks to send a request to UMMC for the records. Meanwhile, MAIF had sent Mr. Sperling a follow-up letter on March 12, 2018, requesting Ms. Boyd's prior obstetrical records.

Although the record does not indicate the date that Mr. Sperling actually received the UMMC records that were printed out on April 19, 2018, the record reflects that Mr. Sperling's office contemplated the possibility of Mr. Sperling picking up records relating to Ms. Boyd's prior childbirth when they were ready. Thus, Mr. Sperling either had or should have had the records in his possession for at least a few weeks prior to his suspension. In any event, Ms. Boyd's records were in Mr. Sperling's file when Ms. Boyd retrieved the file from Mr. Sperling's office. However, Mr. Sperling did not discuss the status of the case with Ms. Boyd, including that he had received the medical records MAIF had requested, but had not yet provided them to MAIF. Had Mr. Sperling imparted this information to Ms. Boyd, Ms. Boyd could have considered whether to continue pursuing

34

settlement with MAIF with the medical records in hand, either with Mr. Sperling as her attorney following the completion of his suspension, or through new counsel.

For these reasons, we overrule Mr. Sperling's exception regarding the hearing judge's Rule 1.3 conclusion with respect to Ms. Boyd's medical records.

*Violations of Rule 1.4*

Rules 1.4(a)(2) and (b) respectively require an attorney to "keep the client reasonably informed about the status of the matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The hearing judge concluded that Mr. Sperling violated Rule 1.4 by: (1) never discussing the contents of the complaint with his clients, showing the complaint to them, or providing them with a copy of the complaint; (2) never explaining to the clients why he listed damages in excess of $75,000.00 for each of them in the complaint; (3) never "discuss[ing] the legal process with them"; (4) never advising them that the court had issued a Notice of Contemplated Dismissal due to the lack of service on Ms. LaPlante; and (5) failing to convey MAIF's second settlement offer to the clients. Mr. Sperling excepts to all of these conclusions, which we now discuss in turn.

*a.  Failure to Discuss, Show, and Provide Copies of the Complaint*

The record reflects that Mr. Sperling frequently communicated with Ms. Boyd and Mr. Bailey about their matters over the two-and-a-half years that he represented them, although there were a few stretches of time when Mr. Sperling was less communicative, at least with Ms. Boyd. Regardless, Mr. Sperling contends that, in light of the overall level of communication between him and the clients, the hearing judge erred in concluding that Mr.

35

Sperling violated Rule 1.4 by failing to discuss the contents of the complaint with the clients and by failing to show them the complaint or to provide them with copies of it.

We conclude that Mr. Sperling did not violate Rule 1.4 through these inactions. In some instances, it may constitute a violation of Rule 1.4 not to provide a copy of a filed complaint to one's client. If there was evidence that either Ms. Boyd or Mr. Bailey had ever asked Mr. Sperling for a copy of the complaint, his failure to comply with such a request might constitute a violation of the rule. However, Ms. Boyd and Mr. Bailey never asked Mr. Sperling to show them the complaint or to send them a copy of it. Moreover, in the context of this particular complaint, which straightforwardly alleged negligence on the part of Ms. LaPlante, we conclude that Mr. Sperling was not required under Rule 1.4 on his own initiative to discuss the specific contents of the complaint with the clients in order to keep them reasonably informed about the status of the case or to allow them to make informed decisions regarding the representation. At some point during litigation, it may be advisable or even necessary to provide one's clients with a copy of the complaint in which they are named as plaintiffs, and/or to discuss some of the specific allegations contained in the complaint. There is no evidence in the record to suggest that Ms. Boyd or Mr. Bailey was prejudiced in any respect by virtue of the fact that Mr. Sperling did not provide them with specifics concerning the complaint, or with a copy of the complaint itself, prior to the termination of his representation. For these reasons, we sustain Mr. Sperling's exception on this point.

*b. Failure to Explain the $75,000 Damages Amount*

For the same reasons, we sustain Mr. Sperling's exception to the hearing judge's conclusion that Mr. Sperling violated Rule 1.4 by not explaining to Ms. Boyd and Mr. Bailey why he alleged damages in excess of $75,000 for both of them in the complaint. There is no allegation or evidence that the prayer of relief in excess of $75,000 for both clients prejudiced the clients in any respect. In the circumstances of this case, we do not believe that Mr. Sperling was required to explain to his clients why he thought that this prayer for relief was appropriate.

*c. Failure to Discuss "the Legal Process" with the Clients*

We also sustain Mr. Sperling's exception to the hearing judge's conclusion that he violated Rule 1.4 by "never discuss[ing] the legal process" with Ms. Boyd and Mr. Bailey. To the contrary, the record reflects that Mr. Sperling communicated on multiple occasions with Ms. Boyd and Mr. Bailey about the case and the legal process that was occurring or would occur as he represented them.

*d. Failure to Advise the Clients of the Dismissal Due to Lack of Service*

The hearing judge concluded that Mr. Sperling also violated Rule 1.4 by failing to tell Ms. Boyd and Mr. Bailey that the circuit court had issued a notice of contemplated dismissal of their lawsuit due to the failure to serve Ms. LaPlante. In and of itself, the lack of client notification of this particular event in the lawsuit did not violate Rule 1.4. After receiving the notice of contemplated dismissal, Mr. Sperling sought and received a deferral of dismissal of the lawsuit. In our view, it was reasonable for Mr. Sperling not to focus the

clients on the notice of contemplated dismissal, given Mr. Sperling's decision to move to defer dismissal and given the circuit court's grant of the motion to defer dismissal.

However, we are troubled by the clients' testimony that they were not aware of the subsequent dismissal of their case due to the failure to serve Ms. LaPlante. Perhaps anticipating this concern, Mr. Sperling contends in his exceptions that the hearing judge "committed error when he concluded the clients were unaware or did not understand the case had been dismissed without prejudice." However, the hearing judge credited the clients' testimony, and rejected Mr. Sperling's testimony, on this point. Once again, we will not disturb this credibility determination.[17]

---

[17] The dissent reads the hearing judge's opinion as not finding that Mr. Sperling failed to tell the clients that the case had been dismissed without prejudice. Although the hearing judge based his conclusion of a Rule 1.4 violation on Mr. Sperling's failure to tell the clients that the circuit court had issued a notice of contemplated dismissal, in his findings of fact the hearing judge found that Mr. Sperling also did not tell the clients that the case was dismissed. *See* page 9 *supra* (quoting the hearing judge's findings of fact: "Respondent testified that he informed Boyd and Bailey of the dismissal and discussed the meaning and significance with them. Again, this court finds such testimony to be in direct conflict with the credible testimony of Boyd and Bailey that Respondent never advised them of the dismissal and that they were under the impression that the case was active."). Ms. Boyd testified unequivocally that Mr. Sperling did not tell her the case was dismissed. The hearing judge was permitted to credit this testimony and to discredit Mr. Sperling's testimony that he told Ms. Boyd about the dismissal.

The hearing judge also was permitted to credit Mr. Bailey's testimony that Mr. Sperling did not tell him about his failure to serve Ms. LaPlante and the resulting dismissal of the case. Mr. Bailey testified as follows:

> Q: What, if any, discussion did you have with Mr. Sperling about serving process on the at fault driver in your lawsuit?
> A: I didn't know the at fault driver had to be there or had to be served when they were doing that.
> ….

Mr. Sperling alternatively argues that, regardless of any failure on his part to tell the clients that the case was dismissed due to failure to serve Ms. LaPlante, his inaction did not prevent the clients from making informed decisions about their cases. We disagree. Although an attorney is not required to tell his clients about every ultimately insignificant bump in the road in a case, there are some things that an attorney must communicate, given the case's and the clients' particular circumstances. It may be that an attorney does not have to tell a client about a dismissal without prejudice in every instance. For example, if a case is dismissed with leave to amend, and the attorney for the plaintiff files a timely amended complaint that allows the case to proceed, it may not matter whether the attorney has told the clients about the dismissal of the prior complaint. Here, however, we believe

---

Q: … [A]t any point in time during the representation, did Mr. Sperling have any discussion with you about having trouble locating the at fault driver?
A: No.
Q: At any time during the representation did Mr. Sperling explain to you that he was unable to serve process on the at fault driver?
A: No.
….
Q: Did Mr. Sperling at any time inform you that your lawsuit had been dismissed?
A: No.
Q. So in December of 2017, which is the date of [the] order [of dismissal], what did you understand the status of the case to be?
A. I was under the assumption that it was still going on.

When asked what he meant when he said he assumed the case "was still going on," Mr. Bailey replied: "I figured that he was, you know, put it back into the Circuit Court or doing -- hoping to get us a larger amount from the five hundred dollars." The dissent interprets this statement as Mr. Bailey testifying that he understood at the time that the case had been dismissed. In our view, the hearing judge was not required to adopt this interpretation. We defer to the hearing judge's resolution of any conflicts in Mr. Bailey's testimony.

39

the circuit court's dismissal of the lawsuit for failure to serve Ms. LaPlante was a case development that Mr. Sperling needed to communicate to his clients. Had they known of the dismissal in December 2017, Ms. Boyd and Mr. Bailey might have approached the period of January-June 2018 in a different manner. That is, had they known that vindicating their rights in court seemingly had become a less realistic option, the clients might have pushed Mr. Sperling to settle their cases with MAIF with more urgency. Of course, we do not know how things would have turned out had Mr. Sperling informed Ms. Boyd and Mr. Bailey prior to his suspension that the case had been dismissed without prejudice in December 2017. But we do not need a crystal ball to determine that Ms. Boyd and Mr. Bailey may well have fared better in their cases if Mr. Sperling had informed them of the problems he encountered attempting to serve Ms. LaPlante, which had led to the dismissal of the case. In any event, the clients needed to know about these developments in order to make reasonable decisions about how to proceed with their claims. For these reasons, we overrule Mr. Sperling's exception on this point, and conclude that Mr. Sperling's failure to communicate these specific case developments to Ms. Boyd and Mr. Bailey violated Rules 1.4(a)(2) and (b).

#### e. *Failure to Convey MAIF's Second Settlement Offer*

Having overruled Mr. Sperling's exception to the Rule 1.1 and 1.3 violations based on his failure to convey MAIF's second settlement offers to Ms. Boyd and Mr. Bailey, we also overrule Mr. Sperling's exception to the hearing judge's conclusion that he violated Rule 1.4 by this omission. *See AGC v. Harris*, 366 Md. 376, 399 (2001) (attorney violated Rule 1.4 by failing to convey a $1,000 settlement offer made by an insurance company);

40

*AGC v. Steinberg*, 395 Md. 337, 363-64 (2006) (attorney violated Rule 1.4 by informing one client, but not his other client, about a settlement offer).

*Violation of Rule 8.1(a)*

The hearing judge concluded that Mr. Sperling violated Rule 8.1(a) when he submitted his written responses to Bar Counsel's inquiries concerning Ms. Boyd's and Mr. Bailey's complaints. In his letters to Bar Counsel, both dated August 9, 2018, Mr. Sperling wrote that the cases were "in the process of being fully and properly litigated when [he] was suspended." The hearing judge concluded that Mr. Sperling "knowingly made a false statement of a material fact" to Bar Counsel by including this sentence in the letters, because at the time Mr. Sperling submitted the letters, he "knew that the case had been dismissed, albeit without prejudice." The hearing judge continued: "More importantly, [Mr. Sperling] knew that he had been discharged by Boyd and Bailey. In fact, at that time the case could not be 'fully and properly litigated' by [Mr. Sperling], as he was under suspension."

Taking these conclusions in reverse order, we observe that the hearing judge failed to note that Mr. Sperling limited his description of the lawsuit being "fully and properly litigated" to the point of time immediately before his suspension. At that time, he had not yet been discharged by Ms. Boyd and Mr. Bailey, and of course, prior to his suspension there was no bar to Mr. Sperling continuing to represent Ms. Boyd and Mr. Bailey in their efforts to obtain compensation for the accident caused by Ms. LaPlante.

Thus, the only possible basis for the Rule 8.1(a) violation is the statement that Mr. Sperling was "fully and properly litigat[ing]" the case as of the date of his suspension. We

41

do not believe that this statement can form the basis of a Rule 8.1(a) violation. Although the case had been dismissed without prejudice, it is clear from the record that Mr. Sperling continued to work on the case, at least to some extent, following the dismissal. Whether his efforts were "full" and/or "proper," as he described them in the letters to Bar Counsel, seems more a matter of opinion than fact. Although "litigated" could be read to mean that the case was then presently the subject of a pending complaint in court, that word is broad enough also to describe Mr. Sperling's efforts after the dismissal. Moreover, Bar Counsel could easily determine through inspection of the docket that the case had been dismissed without prejudice in December 2017. We cannot conclude by clear and convincing evidence that Mr. Sperling attempted to deceive Bar Counsel that the case was the subject of a pending complaint at the time of his suspension.

For these reasons, we sustain Mr. Sperling's exception to the hearing judge's conclusion regarding Rule 8.1(a).

### *Violation of Rule 8.4(a)*

It is not clear from the hearing judge's conclusions of law whether he found a violation of Rule 8.4(a). However, this is not a matter of debate, as we have concluded that Mr. Sperling violated one or more of the other rules of professional conduct. Rule 8.4(a) makes it a violation to violate another rule of professional conduct. Accordingly, we conclude that Mr. Sperling violated Rule 8.4(a).

### *Violation of Rule 8.4(c)*

In the section of his opinion discussing aggravating factors, the hearing judge stated: "The court further finds that Respondent was dishonest by not informing his clients of an

increased settlement offer, and that [sic] the reason for the dismissal of their case before the Circuit Court." As discussed above, we interpret this statement as the hearing judge's conclusion that Mr. Sperling violated Rule 8.4(c) when he failed to inform his clients of these matters. However, we do not believe that Mr. Sperling's failure to advise Ms. Boyd and Mr. Bailey of the second settlement offer and of the reason for the dismissal of their case in the circuit court can form the basis of a Rule 8.4(c) violation. There is no evidence in the record to suggest that Mr. Sperling made any misrepresentations to the clients concerning these matters. The clients testified that Mr. Sperling never told them about the second settlement offer and never told them that the case had been dismissed. They did not testify that Mr. Sperling affirmatively told them that MAIF made only one settlement offer or that the case was not dismissed. Thus, we find no Rule 8.4(c) violation in this case.[18]

### *Violation of Rule 8.4(d)*

Mr. Sperling excepts to the hearing judge's conclusion that he violated Rule 8.4(d), arguing that his violations of the rules requiring competence, diligence, and reasonable communication do not show that he engaged in conduct that is prejudicial to the administration of justice. We disagree.

As discussed above, Mr. Sperling's violations negatively affected Ms. Boyd's and Mr. Bailey's efforts to obtain compensation for the injuries they suffered as a result of the car accident. Thus, Mr. Sperling's failures were prejudicial to the administration of justice

---

[18] Bar Counsel did not file an exception to the hearing judge's failure to find a Rule 8.4(c) violation based on Mr. Sperling's characterization of the lawsuit as "pending" in his June 3, 2018 letters to Ms. Boyd and Mr. Bailey.

in Ms. Boyd's and Mr. Bailey's case. In addition, when an attorney's incompetence, lack of diligence, and failure to communicate causes his clients to be worse off than they would have been had they retained another attorney, those failures bring disrepute to the legal profession, thereby violating Rule 8.4(d). *See AGC v. Chanthunya*, 446 Md. 576, 602-03 (2016) (an attorney can violate Rule 8.4(d) by violating Rules 1.1, 1.3, and 1.4); *AGC v. Park*, 427 Md. 180, 194 (2012) ("Respondent's failure to pursue [his client]'s applications diligently and competently, as well as his failure to maintain sufficient communication with [his client], as demonstrated by our conclusion that Respondent violated [Rules] 1.1, 1.3, and 1.4, constitutes conduct that brings disrepute to the legal profession, in violation of [Rule] 8.4(d).").[19]

## D. Aggravating and Mitigating Factors

Bar Counsel has the burden of proving the existence of aggravating factors by clear and convincing evidence. *AGC v. Edwards*, 462 Md. 642, 708 (2019). Mr. Sperling must prove the presence of mitigating circumstances by a preponderance of the evidence. *Id.* (citation omitted).

### 1. Aggravating Factors

We have recognized the following aggravating factors that, if found, are relevant to the appropriate sanction:

---

[19] To the extent the hearing judge based his conclusion regarding Rule 8.4(d) on his finding that Mr. Sperling's "response to inquiries from his clients and representatives from MAIF can be described as inconsistent, at best," we disagree that this finding supports a violation of Rule 8.4(d) by clear and convincing evidence. We overrule the remainder of Mr. Sperling's exceptions to the hearing judge's conclusions regarding Rule 8.4(d).

(1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [Rules]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Sperling & Sperling*, 459 Md. at 275.

### a. Mr. Sperling's Exceptions to the Aggravating Factor of Prior Disciplinary Offenses

The hearing judge found one aggravating factor: prior attorney discipline. As discussed above, this Court suspended Mr. Sperling from the practice of law for 90 days as of May 21, 2018, for violations of the rules of professional conduct resulting from Mr. Sperling's failure to safeguard funds in an attorney trust account held by the Sperling Law Office and his failure to supervise the work of Jonathan Sperling (a suspended attorney) at that firm. *See id.* at 212, 237-40, 244-49, 281. In addition, on June 29, 2018, under Maryland Rule 19-717, the AGC issued a public reprimand to Mr. Sperling in connection with violations of Rule 1.7, Rule 8.1(b), and Rule 8.4(d).

Mr. Sperling excepts to this aggravating factor on two grounds.

### i. Consideration of Mr. Sperling's Prior Public Reprimand

First, Mr. Sperling argues that we should not consider his prior public reprimand in determining whether the aggravating factor of prior attorney discipline is present, because Bar Counsel did not introduce evidence of the reprimand at the hearing and the hearing

judge, therefore, did not consider it. Mr. Sperling cites no authority for this proposition. Although, in general, we confine our review to matters in the record before the hearing judge, we may take judicial notice of facts outside the record before a hearing judge in an attorney grievance case, where appropriate under Maryland Rule 5-201.[20] *See AGC v. Davy*, 435 Md. 674, 683 n.2 (2013); *see also AGC v. Pinno*, 437 Md. 70, 75 n.3 (2014); *Steinberg*, 395 Md. at 356. In *AGC v Woolery*, 462 Md. 209 (2018), as in this case, Bar Counsel asked this Court to take judicial notice of a prior reprimand that the AGC had issued to the respondent by way of a letter. *Id.* at 251-52. We took judicial notice of the prior Commission reprimand in discussing the aggravating factor of prior attorney discipline, *id.*, and referred to it in discussing the appropriate sanction for that attorney. *Id.* at 256.

Similarly, without referring to judicial notice, we effectively took judicial notice of a prior public reprimand in *AGC v. Bleecker*, 414 Md. 147 (2010). In that case, the hearing judge found that the respondent had established the mitigating factor of the absence of prior discipline because the respondent had "no prior public disciplinary record." *Id.* at 168 n.14. Bar Counsel excepted to this mitigating factor, *id.*, and attached to its exceptions a copy of a prior public reprimand that the AGC had issued to the respondent in 2003. In oral argument in that case, the respondent's counsel stated that the respondent did not dispute

---

[20] Maryland Rule 5-201(b)(2) allows this Court to take judicial notice of a fact that is "not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

having received the prior public reprimand. This Court sustained Bar Counsel's exception, *id.*, and referred to the prior reprimand as an aggravating factor. *Id.* at 177.

It is preferable for Bar Counsel to introduce evidence of all prior attorney discipline of which Bar Counsel is aware at the evidentiary hearing so that the hearing judge may consider such evidence when making findings concerning aggravating factors. However, if Bar Counsel misses a prior instance of attorney discipline at the time of the hearing, or for any other reason does not make an instance of prior attorney discipline a matter of record before a hearing judge, Bar Counsel's omission at the earlier stage in the case does not preclude us from considering the prior attorney discipline as an aggravating factor. Ultimately, our mandate is to protect the public. This requires us to consider all prior instances of discipline in an attorney's record to the extent there are reliable records available to us concerning such offenses.

On August 29, 2018, Bar Counsel sent the Clerk of this Court a copy of the Commission's public reprimand of Mr. Sperling and asked the Clerk to forward the reprimand to the National Lawyer Regulatory Data Bank of the American Bar Association under the terms of Maryland Rule 19-707(e). The letter of reprimand that the AGC sent to this Court is a reliable record of this instance of prior discipline. Mr. Sperling does not dispute that he received this public reprimand in 2018. For these reasons, as in *Woolery* and *Bleecker*, we take judicial notice of the prior public reprimand and will consider its significance with respect to the aggravating factor of prior attorney discipline and the proper sanction in this case.

47

ii.     *Timing and Nature of Mr. Sperling's Prior Disciplinary Offenses*

Next, Mr. Sperling excepts to the hearing judge's finding of the aggravating factor of prior attorney discipline. He contends that we may not consider his prior disciplinary offenses as an aggravating factor because his violations of Rules 1.1, 1.3, and 1.4 occurred before the imposition of any prior discipline and because his prior offenses involved different types of misconduct than in this case. These contentions lack merit.

We draw our list of recognized aggravating factors from Standard 9.22 of the Standards for Imposing Lawyer Sanctions, which the American Bar Association adopted in 1986 and last amended in 1992 (the "ABA Standards"). *See, e.g.*, *Bleecker*, 414 Md. at 176-77. The ABA Standards treat "prior attorney discipline" as a general aggravating factor in Standard 9.22 differently than they do in instances where an attorney violates a rule of professional conduct after having been disciplined for the same or similar misconduct. With respect to the latter, the ABA Standards set forth specific standards, 8.0 through 8.4, which suggest particular sanctions depending on the extent of the prior discipline:

8.0 Prior Discipline Orders
Absent aggravating or mitigating circumstances, … the following sanctions are generally appropriate in cases involving prior discipline.

8.1 Disbarment is generally appropriate when a lawyer:
(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or
(b) *has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.*

8.2 *Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.*

8.3 Reprimand is generally appropriate when a lawyer:
   (a) negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or
   (b) *has received an admonition for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.*

8.4 An admonition is generally not an appropriate sanction when a lawyer violates the terms of a prior disciplinary order *or when a lawyer has engaged in the same or similar misconduct in the past.*

(emphasis added).

With respect to the former, ABA Standards 9.2, 9.21, and 9.22 address "aggravating circumstances" and list "prior disciplinary offenses" as one of several "[f]actors which may be considered in aggravation." ABA Standards 9.2, 9.21 and 9.22(a).

The ABA Standards' general reference to "prior disciplinary offenses" as an aggravating circumstance in Standard 9.22(a) and the specific references in Standards 8.0 through 8.4 to violations for the same or similar misconduct that was the subject of a prior disciplinary sanction, indicate that "prior disciplinary offenses" in Standard 9.22(a) does not refer only to those prior offenses that are followed by the same or similar acts of misconduct. In other words, while all prior disciplinary offenses are aggravating circumstances under Standard 9.22(a), those prior disciplinary offenses that are followed by "similar acts of misconduct that cause injury or potential injury to a client" are particularly aggravating and therefore form the basis for a presumptive sanction under

49

Standards 8.0 through 8.4. Thus, Mr. Sperling is incorrect when he contends that his prior disciplinary offenses are not aggravating circumstances because the acts that make out his current violations preceded the imposition of sanctions in the prior disciplinary matters and because the current violations are based on misconduct that is not similar to the misconduct that resulted in the prior sanctions.

The cases upon which Mr. Sperling relies are not to the contrary. In *Hodes*, we explained that we "look to 'the presence or absence of mitigating factors and the prior disciplinary history of the attorney ... particularly as it reveals the presence or absence of misconduct of the same, or similar, kind to that being addressed.'" 441 Md. at 206 (quoting *AGC v. McCulloch*, 404 Md. 388, 402 (2008)). The word "particularly" is consistent with our interpretation of the ABA Standards. While prior discipline is *particularly* problematic if the attorney committed the same or similar misconduct after being sanctioned, it does not follow that a prior disciplinary offense has *no* aggravating value unless it relates to the same or similar misconduct found in the case under review and unless the prior sanction was imposed before the attorney committed the acts that form the basis for the new violation(s).

In *AGC v. Mixter*, 441 Md. 416 (2015), at the outset of our discussion of aggravating factors, we summarized the several aggravating circumstances set forth in ABA Standard 9.22 that were present in Mixter's case, including that "Mixter had previously been reprimanded for abusive discovery tactics, some of which have been replicated in this case, which include acts after 2008, when Mixter was previously sanctioned." *Id.* at 528. However, in our subsequent specific finding regarding the aggravating factor of "prior

disciplinary offenses" set forth in ABA Standard 9.22(a), we said only that this circumstance was "present here, because Mixter received a reprimand, by consent, from this Court for Rule 3.2 and 8.4(d) violations in 2008." *Id.* We do not read *Mixter* to suggest that, if Mixter had previously been reprimanded for a Rules violation that he had not "replicated" in the case under review, or if his reprimand had been imposed after he committed the acts at issue in the case under review, we would not have considered such a prior sanction as an aggravating factor.

For the same reason, Mr. Sperling's citation of the pre-ABA Standards case of *Maryland State Bar Assn. v. Phoebus*, 276 Md. 353 (1975), misses the mark. In *Phoebus*, this Court observed that, despite the respondent's suspensions in 1966 and 1971, he had run afoul of the rules of professional conduct yet again by neglecting several clients' cases in 1973-74. In explaining why the Court was disbarring the respondent for having neglected his clients' cases, the Court stated: "It is apparent that the prior sanctions – by way of suspensions – did not succeed in imparting to him an appreciation of the seriousness of the duties an attorney owes his clients. Such sanctions obviously were ineffective in undertaking to cure the evil of his prior proven neglect, and failed to persuade him to reform his ways and to conform his conduct to the standards demanded of the profession." *Id.* at 365. In essence, *Phoebus* applied the logic of ABA Standard 8.1(b) more than a decade before the adoption of the ABA Standards. Having previously suspended Phoebus for client neglect, this Court held that Phoebus's subsequent violation of the same rule of professional conduct warranted disbarment. However, it does not follow that, if Phoebus's only disciplinary sanction had been imposed earlier in 1975 and/or was based on

51

misconduct that did not involve client neglect, the Court would not have considered such a hypothetical prior offense in determining a proper sanction. Perhaps in such a hypothetical situation, the sanction would have been something short of disbarment. However, nothing in *Phoebus* or any subsequent case suggests that this Court would have declined to consider such a prior sanction as an aggravating factor. Indeed, in numerous cases decided after *Phoebus* and the advent of the ABA Standards, we have found the aggravating factor of prior attorney discipline to be present where the misconduct that led to the prior sanction was different in kind from the misconduct found in the case under review. *See, e.g.*, *AGC v. Ambe*, 466 Md. 270, 300 (2019); *AGC v. Bell*, 432 Md. 542, 560 (2013); *AGC v. Coppock*, 432 Md. 629, 648 (2013); *AGC v. Monfried*, 368 Md. 373, 396 (2002).

We have also considered a prior disciplinary offense as an aggravating factor, where the sanction for the prior offense was imposed after the attorney performed the acts at issue in the case under review. *See AGC v. Lawson*, 428 Md. 102, 105, 117 (2012) (attorney had been suspended in 2007 for attempting to increase a fee by threatening withdrawal after beginning representation of a client; in 2012, this Court disbarred the attorney for other fee-related misconduct that he committed before his suspension, explaining that "[t]he current case merely demonstrates to a fuller extent the seriousness of [the attorney's] ethical difficulties"); *AGC v. Whitehead*, 405 Md. 240, 263-64 (2008) (attorney had been suspended indefinitely in 2006 for failure to obtain the requisite court approval before paying himself legal fees; in 2008, this Court noted the prior suspension as an aggravating factor and disbarred the attorney for misappropriation of funds when acting as the

52

conservator of an estate from 1999 to 2003); *AGC v. Jacobs*, 459 Md. 291, 307-08 (2018) (attorney was reprimanded in 2015 for multiple rules violations stemming from two matters that both involved failing to serve a defendant and failing to communicate with his client; in 2018, this Court noted the prior reprimand as an aggravating factor in a case involving similar conduct that occurred prior to the 2015 reprimand).

Mr. Sperling cites no case in which we have declined to find the aggravating factor of a prior disciplinary offense, where the attorney's prior sanction was for acts that were different in kind from the misconduct found to have occurred in the case under review, or where the prior sanction was imposed after the last act that contributed to the violation in the pending case. Nor do we believe that we should adopt the limitations that Mr. Sperling urges. ABA Standard 9.22(a) does not place any limit on the timing or nature of a prior disciplinary offense in order for it to be considered an aggravating factor. As we have stated above, a prior disciplinary offense may be particularly aggravating when the case currently under review involves conduct committed after the imposition of the prior sanction and involves the same or similar kinds of misconduct. Conversely, a prior disciplinary sanction for a different type of misconduct imposed after the attorney has committed the acts constituting the current violation(s) may be minimally aggravating. Where appropriate, this Court reviews the facts and circumstances concerning prior discipline to determine how much weight to give such a prior offense in arriving at an appropriate sanction. We undertake that analysis below.

In sum, we overrule Mr. Sperling's exception to the hearing judge's finding of the aggravating factor of prior disciplinary offenses.

53

Bar Counsel requests that we find the existence of several additional aggravating factors that the hearing judge did not identify in his opinion: (1) dishonest or selfish motive; (2) pattern of misconduct; (3) multiple offenses; (4) submission of false evidence during the disciplinary process; (5) substantial experience in the practice of law; and (6) refusal to acknowledge the wrongful nature of the conduct.

We overrule Bar Counsel's exception to the hearing judge's failure to find a dishonest or selfish motive. There is no evidence that Mr. Sperling profited financially from his representation of Ms. Boyd and Mr. Bailey. To the contrary, the record reflects that Mr. Sperling lost money on their portion of the case, as he had to pay for medical records and other expenses that he did not recoup by way of a recovery on behalf of those clients.

We also overrule Bar Counsel's exception regarding a pattern of misconduct. This aggravating factor "applies when an attorney's behavior shows a pattern of inappropriate conduct, as evinced by multiple violations over time, or a series of acts with one goal." *Sperling & Sperling*, 459 Md. at 276. The violations in this case emanated from Mr. Sperling's lapses of competence, diligence, and communication relating to one lawsuit (albeit relating to two of the three clients he represented in the lawsuit). *Compare Chanthunya*, 446 Md. at 607 (finding pattern of misconduct present where the attorney engaged in similar misconduct in representing two clients in different matters). Although an attorney can engage in a pattern of misconduct through acts undertaken in a single

matter, in this case Mr. Sperling did not engage in a series of intentional, affirmative acts of misconduct in furtherance of a wrongful goal. *Compare AGC v. Coppola*, 419 Md. 370, 406 (2011) (finding pattern of misconduct where attorney engaged in a series of acts of misconduct to accomplish the goal of changing a hospitalized and unconscious person's estate plan, including obtaining multiple forged or false signatures and attestations, notarizing multiple false and fraudulent documents, and directing an employee to record a fraudulent deed in county land records). In *Sperling & Sperling*, we overruled Bar Counsel's exception to the hearing judge's failure to find that this aggravating factor applied to Mr. Sperling, whose "misconduct stem[med] not from a pattern of acts, but inattentiveness." 459 Md. at 276. The same is true in this case.

We agree with Bar Counsel that the aggravating factor of multiple violations of the rules of professional conduct is present. Mr. Sperling violated Rules 1.1, 1.3, 1.4, and 8.4(d) in relation to four distinct lapses: (1) his failure to take steps to serve Ms. LaPlante after the circuit court granted his motion to defer dismissal; (2) his failure to inform the clients that the case had been dismissed without prejudice due to lack of service on Ms. LaPlante; (3) his failure to convey MAIF's second settlement offer to the clients; and (4) his failure to provide Ms. Boyd's medical records to MAIF. This is sufficient to constitute multiple violations of the rules for purposes of this aggravating factor. *See Chanthunya*, 446 Md. at 607 (finding aggravating factor of multiple violations where the attorney violated Rules 1.1, 1.3, 1.4, and 8.4(d) with respect to two clients' matters); *Mixter*, 441 Md. at 530 ("Factor (d), 'multiple offenses,' is implicated when an attorney violates multiple disciplinary rules.") (citation omitted).

We overrule Bar Counsel's exceptions regarding the submission of false evidence during the disciplinary process and refusal to acknowledge wrongdoing. Although the hearing judge found certain parts of Mr. Sperling's testimony to lack credibility, he made no finding that Mr. Sperling intentionally lied or attempted to be deceptive in his testimony. Moreover, in his testimony at the hearing, Mr. Sperling acknowledged that there was more he could have done in his representation of the clients, and the hearing judge found the mitigating factor of remorse. We defer to the hearing judge's assessment of Mr. Sperling's state of mind. *See AGC v. Framm*, 449 Md. 620, 663 (2016) (determination of whether an attorney has made a misrepresentation intentionally is "largely a matter of credibility. We defer to the hearing judge's determination in that respect, particularly when it comes to assessing an attorney's state of mind as to an intent to deceive.") (internal quotation marks and citation omitted).

We sustain Bar Counsel's exception to the hearing judge's failure to find the aggravating factor of substantial experience in the practice of law. Mr. Sperling was admitted to the Maryland Bar in December 1996. As such, he had been practicing law for 19 years when he began his representation of Ms. Boyd and Mr. Bailey.

In sum, we find that three aggravating factors exist in this case: (1) prior disciplinary offenses; (2) multiple violations; and (3) substantial experience in the practice of law.

2. Mitigating Factors

We have previously listed relevant mitigating factors as including:

absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure

56

to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Hodes*, 441 Md. at 209 (citation omitted).

We interpret the hearing judge's opinion as finding the presence of three mitigating factors: absence of a dishonest or selfish motive; remorse; and good character. Mr. Sperling excepts to the hearing judge's failure to find several other mitigating factors, namely, full and free disclosure to Bar Counsel or cooperative attitude toward the disciplinary proceedings; remoteness of prior offenses; and the fact that his prior 90-day suspension ended up being a 129-day suspension, based on his date of reinstatement.

Mr. Sperling did not show by a preponderance of the evidence that he made full and free disclosure to Bar Counsel or demonstrated a cooperative attitude toward the disciplinary proceedings. Although we have overruled Bar Counsel's exceptions to the aggravating factor of submission of false evidence during the disciplinary process, it does not follow that Mr. Sperling made full and free disclosure to Bar Counsel and/or demonstrated a cooperative attitude toward the disciplinary proceedings. We view the evidence concerning this factor as being in equipoise. Accordingly, we overrule Mr. Sperling's exception.

We also overrule Mr. Sperling's exception as to the remoteness of prior offenses. In support of his exception, Mr. Sperling points to the lapse of time between the acts underlying his violations relating to Ms. Boyd and Mr. Bailey (which occurred between 2016 and 2018) and the filing of the PDRA on June 11, 2019. However, the mitigating

factor of remoteness of "prior offenses" refers to the remoteness of prior disciplinary offenses, not the remoteness of the acts underlying the violations found in this case measured against the filing of the PDRA. *See Sperling & Sperling*, 459 Md. at 277-78 (describing remoteness factor as pertaining to the "remoteness of prior violations of the MLRPC"); *see also* ABA, Annotated Standards for Imposing Lawyer Sanctions 539-40 (2d ed. 2019) (discussing this mitigating factor). Mr. Sperling's two prior disciplinary sanctions, which were both imposed in 2018, are not "remote."

With respect to the effective length of Mr. Sperling's prior suspension, Mr. Sperling notes that, in opposing his petition for reinstatement at the conclusion of his 90-day suspension, Bar Counsel stated that Ms. Boyd's and Mr. Bailey's complaints warranted further investigation. According to Mr. Sperling, this resulted in his reinstatement 129 days after the commencement of his suspension, as opposed to 90 days. At oral argument, Mr. Sperling analogized this 39-day extension of his suspension to a period of "time served" – *i.e.*, when a criminal defendant receives credit toward his or her sentence based on the amount of time the defendant spent in pretrial and/or presentencing custody. *See, e.g.*, *Bratt v. State*, 468 Md. 481, 499-500 (2020).

Although Mr. Sperling correctly observes that the list of mitigating factors set forth above is not exhaustive, *see, e.g.*, *AGC v. Sheridan*, 357 Md. 1, 31 (1999), we decline to consider his date of reinstatement as a mitigating factor for three reasons. First, the 39-day "delay" of which Mr. Sperling complains was the result of the normal processing of a petition for reinstatement where Bar Counsel had filed a timely objection. Under Maryland Rule 19-751(c)(2), a petition for reinstatement following a suspension of six months or less

may not be filed earlier than 10 days prior to the end of the period of suspension. Mr. Sperling filed his petition for reinstatement 10 days prior to the end of his suspension period. The petition attached Mr. Sperling's required affidavit under Maryland Rule 19-742(c)(3) as well as other documents relating to the Boyd and Bailey complaints. Once Mr. Sperling filed his petition, Bar Counsel had five days in which to file a timely objection. Md. Rule 19-751(d). Bar Counsel was required to state any objection to the petition "with particularity." *Id.*

With Mr. Sperling's consent, Bar Counsel moved for, and this Court granted, a one-week extension of time for Bar Counsel to file its response to Mr. Sperling's petition for reinstatement. That response, therefore, was due no later than August 22, 2018. Bar Counsel filed its objections to the petition for reinstatement on that date. Bar Counsel's objections consisted of an 11-page memorandum and more than 100 pages of exhibits. As explained above, Bar Counsel raised two distinct objections: (1) Mr. Sperling allegedly had failed to provide Bar Counsel with full information about his attorney trust accounts during the pendency of his suspension, which required further investigation; and (2) Ms. Boyd's and Mr. Bailey's pending complaints also required further investigation. On September 5, 2018, Mr. Sperling filed a 10-page reply to Bar Counsel's objections, taking issue with all of Bar Counsel's contentions and arguing (among other points) that this Court should grant Mr. Sperling's petition for reinstatement, despite the pendency of the Boyd and Bailey complaints.

Because Bar Counsel filed a timely objection, the Clerk of this Court was required to "refer the matter to the full Court for its consideration." Md. Rule 19-751(e)(2). We take

judicial notice of the fact that this Court's monthly conference for September 2018 occurred on September 27, 2018. On September 28, 2018, we granted Mr. Sperling's petition for reinstatement over Bar Counsel's objections.

In light of the chronology recited above, we conclude that Mr. Sperling's reinstatement on September 28, 2018, was not unduly delayed. Mr. Sperling was not entitled to resume the practice of law on the first day following the end of his suspension period. *See* Md. Rule 19-751(b) ("An attorney subject to this Rule is not automatically reinstated upon expiration of the period of suspension. An attorney is not reinstated until the Court of Appeals enters an Order of Reinstatement."). The 39-day period between the end of the 90-day suspension period and the date this Court granted Mr. Sperling's petition for reinstatement was necessary for this Court to review, discuss, and rule on Mr. Sperling's petition.

Second, Bar Counsel's objections to the petition for reinstatement were based not only on the Boyd/Bailey matter, but also on the asserted failure of Mr. Sperling to provide information concerning his attorney trust account. Had Bar Counsel based its objections to Mr. Sperling's petition for reinstatement solely on the need to further investigate his handling of his attorney trust account during the time of his suspension, we would not have reinstated Mr. Sperling any sooner than we did.

Third, we find Mr. Sperling's analogy to "time served" to be inapt. Although Mr. Sperling has cited cases from other jurisdictions where courts, in imposing suspensions on attorneys, have stated that the attorneys would receive credit for the time they were suspended on a temporary or interim basis while their disciplinary cases were adjudicated,

60

*see, e.g., Disciplinary Counsel v. Atway*, 153 N.E.3d 79, 80 (Ohio 2020), Mr. Sperling was

not temporarily suspended pending the resolution of the instant allegations.

In sum, the following mitigating factors are present in this case: absence of a

dishonest or selfish motive; remorse; and good character.

## E. Sanction

We now consider the appropriate sanction to impose on Mr. Sperling for his

violations of Rules 1.1, 1.3, 1.4, 8.4(a), and 8.4(d). As we have previously stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect
> the public and the public's confidence in the legal profession. This Court
> accomplishes these goals by: (1) deterring other lawyers from engaging in
> similar misconduct; and (2) suspending or disbarring a lawyer who is unfit
> to continue to practice law.
>
> In determining an appropriate sanction for a lawyer's misconduct, this Court
> considers: (1) the [rules] that the lawyer violated; (2) the lawyer's mental
> state; (3) the injury that the lawyer's misconduct caused or could have
> caused; and (4) aggravating factors and/or mitigating factors.

*Chanthunya*, 446 Md. at 604 (citation omitted).

Bar Counsel recommends that we disbar Mr. Sperling. In support of this sanction,

Bar Counsel asserts that Mr. Sperling's misconduct is similar to the misconduct we

considered in *Jacobs*. In *Jacobs*, the attorney was retained to represent a client in a personal

injury case. After the attorney filed suit, the attorney was unable to serve the defendant,

leading to a dismissal of the case without prejudice. The attorney filed a motion to reopen

or defer dismissal, which was granted. The case was subsequently dismissed again. *Jacobs*,

459 Md. at 296-97. But, unlike this case, in *Jacobs* the statute of limitations ran on the

claim while the attorney still represented the client. *Id.* at 297. The same thing happened

61

with respect to a second accident involving the same client. *Id.* at 298. In disbarring the attorney, this Court considered the attorney's prior reprimand and his actions to conceal the status of the cases from the client, stating that "clients seek representation to have the matters resolved, not to have them ignored." *Id.* at 313.

Here, Mr. Sperling did not ignore Ms. Boyd's and Mr. Bailey's case. And, unlike the attorney in *Jacobs*, Mr. Sperling did not intentionally deceive the clients or Bar Counsel about his conduct, nor did the statute of limitations run on the clients' claims prior to Mr. Sperling's suspension and the clients' termination of his representation. Notably, Mr. Sperling filed a timely new complaint against Ms. LaPlante on behalf of only Ms. Davis at the end of 2018.

Bar Counsel also relies on *AGC v. Johnson*, 450 Md. 621 (2016), in which this Court suspended an attorney for one year who violated Rules 1.3, 1.4, 1.16 (declining or terminating representation), 8.1(b), and 8.4(d). *Id.* at 643-47. After the attorney was retained to represent a client in a child support case, he failed to enter his appearance, failed to timely file exceptions to the magistrate's report, failed to refund the fee paid for the exceptions, and failed to adequately communicate with his client. *Id.* at 631-33. After the client filed a complaint with Bar Counsel, the attorney failed to respond to numerous requests for information. *Id.* at 633-34. Mr. Sperling's misconduct is less serious than that of the attorney in *Johnson*. Among other things, Mr. Sperling was not as inattentive to his clients' case as was the attorney in *Johnson*, nor did Mr. Sperling fail to respond to Bar Counsel's requests for information. In addition, in *Johnson*, we noted the presence of six aggravating factors and only one mitigating factor. *Id.* at 652-53.

Finally, Bar Counsel relies on *AGC v. Kirwan*, 450 Md. 447, 458 (2016), in which this Court indefinitely suspended an attorney who violated Rules 1.1, 1.3, 1.4, 1.16, 8.1(b), and 8.4(d). After being retained to represent a minor child in a personal injury matter, the attorney failed to respond to numerous requests for information from the minor's mother, essentially abandoning the representation. *See id.* at 458-61. In addition, the attorney failed to respond to Bar Counsel's inquiries regarding the mother's complaint. *Id.* at 462. Here, while Mr. Sperling made several mistakes in the course of representing Ms. Boyd and Mr. Bailey, he did not abandon their case. In addition, as stated above, Mr. Sperling did not ignore Bar Counsel's inquiries.

Mr. Sperling contends that his conduct warrants a reprimand or, at most, a short definite suspension. In support of his position that a reprimand is the appropriate sanction, Mr. Sperling cites cases such as *AGC v. Paul*, 423 Md. 268 (2011). In *Paul*, we imposed a public reprimand on Mr. Paul, who violated Rule 8.4(d) by cutting and pasting another attorney's signature onto a stipulation, which the other attorney had not authorized. *Id.* at 277. However, the paper that Mr. Paul filed did not prejudice any party, and Mr. Paul served the other attorney with his filing. *Id.* In addition, the hearing judge found that Mr. Paul's misconduct was not willful, in that he honestly believed that he was legally authorized to add the other attorney's signature to the stipulation. As a result of his misconduct, Mr. Paul was fired from his law firm. *Id.* at 292. The Court also noted that Mr. Paul had "taken it upon himself to seek rehabilitation through ethics counseling" with two seasoned attorneys, and that these "remedial actions dramatically reduce the likelihood that

63

the conduct will be repeated." *Id.* at 292-93. Finally, we noted that Mr. Paul had no record of any prior disciplinary action. *Id.* at 293.

Here, Mr. Sperling has established some mitigation, but not as much as Mr. Paul did in his case. And, significantly, Mr. Paul's case was his first disciplinary offense. This case is Mr. Sperling's third offense.

Mr. Sperling also cites a number of cases in which this Court imposed short suspensions. *See, e.g.*, *AGC v. Singh*, 464 Md. 645 (2019) (60-day suspension for violations of Rules 1.3, 1.4, 1.8, 1.15, 8.1(a), and 8.4(c)); *AGC v. Thompson*, 462 Md. 112 (2018) (60-day suspension for violations of Rules 1.1, 1.3, 1.4, 8.1(a) and (b), and 8.4(c) and (d), among others). However, in those cases, both attorneys had no prior history of discipline, and there were other substantial mitigating factors as well as other considerations present that warranted the sanctions we imposed. *See Singh*, 464 Md. at 681-82 (noting that the attorney serves "a vulnerable class of clients of moderate means" in a practice largely devoted to immigration law in Montgomery County, which has the largest number of immigrants and the highest percentage of foreign-born residents in the State); *Thompson*, 462 Md. at 139 (inexperience in the practice of law, as well as the Court's requirement that the attorney complete a course emphasizing responsible maintenance of an attorney trust account, which contributed to the Court's determination that there was not a likelihood of repetition of the violations).

In addition to the cases the parties cited in their papers, we find *Harris*, *Chanthunya*, and *AGC v. Mooney*, 359 Md. 356 (2000), to be instructive. In *Harris*, this Court determined that the attorney violated Rules 1.1, 1.3, 1.4, and 8.4(d), as well as Rules

64

1.16(a)(2) and 3.2, in the course of handling two personal injury matters on behalf of plaintiffs. *See Harris*, 366 Md. at 405. Notably, as discussed above, one of the bases for the Rule 1.4 violation was the attorney's failure to notify the mother of his juvenile client of a $1,000 settlement offer made by the insurer of the defendant in that case. *Id.* at 399. The attorney also demonstrated a lack of competence and diligence, including failing to respond to interrogatories and failing to appear for a hearing in one case, and failing to appear for trial in the other case, resulting in the latter case being dismissed with prejudice. *Id.* at 394-96, 402-03. The Court also concluded that the attorney violated Rule 1.16(a)(2) by failing to decline or terminate his representation in both cases in light of his medical issues and family tragedies that occurred during the relevant time. *Id.* at 400. Further, the attorney violated Rule 3.2 by failing to expedite litigation. In considering the appropriate sanction, we noted that the attorney had three prior disciplinary sanctions: (1) a reprimand by consent of this Court in 1999 relating to the attorney's violation of Rules 1.3 and 1.4 concerning his failure to file suit on behalf of his client within the statute of limitations; (2) a reprimand in 1996 for the attorney's "neglect of a client's legal matter and his failure to substantively communicate"; and (3) a six-month suspension in 1987 for various disciplinary violations, including neglect of a legal matter and failure to represent his client zealously. *Id.* at 383 & n.6, 405. We imposed a six-month suspension, concluding that the attorney's "violations show a recurring pattern of behavior that is serious enough to warrant suspension for this length of time." *Id.* at 405-06.

In *Chanthunya*, the attorney violated Rules 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), and 8.4(d). We noted that the attorney's misconduct cost one client the opportunity to have the

65

United States Citizenship and Immigration Service consider an appeal, and impeded the progress of that client and another client in becoming naturalized citizens. 446 Md. at 607. We also found the existence of five aggravating factors in *Chanthunya*: (1) a pattern of misconduct; (2) multiple violations of the rules of professional conduct; (3) refusal to acknowledge the misconduct's wrongful nature; (4) substantial experience in the practice of law; and (5) the victims' vulnerability. *Id.* We took note of two mitigating factors: (1) the absence of prior attorney discipline; and (2) the absence of a dishonest or selfish motive. We concluded that the appropriate sanction for the attorney's misconduct was an indefinite suspension with the right to apply for reinstatement after 60 days. We explained that such a sanction would "impress on Chanthunya and other lawyers in immigration cases the importance of representing their clients competently, diligently, and with adequate communication, as clients in such cases are vulnerable and dependent on their lawyers for their – and, in some instances, their family members' – very ability to continue living in the United States." *Id.* at 608.

In *Mooney*, this Court imposed an indefinite suspension with a sit-out period of 90 days on an attorney who, in separately representing four clients, violated Rules 1.1, 1.3, 1.4, 8.4(c), and 8.4(d), as well as Rules 5.1 (responsibilities of partners, managers, and supervisory lawyers) and 5.3 (responsibilities regarding nonlawyer assistants). The attorney failed to appear at one client's trial, and later failed to respond to the client's attempted communications. 359 Md. at 74, 77. As to the second client, a juvenile who was facing attempted murder charges as an adult, the attorney falsely promised the client's mother that he would file a "reverse waiver" motion and visit the client in jail. *See id.* at

66

87. With respect to the third client, an unknown member of the attorney's staff incorrectly informed the client that the client did not need to attend his trial, and the attorney failed to keep his client informed of his case's status. *See id.* at 89-90. As to the fourth client, the attorney failed to subpoena witnesses and to obtain medical records, which may have exculpated his client; failed to respond to his client's communications; and failed to ensure that his associate knew that he had assigned the case to her. *See id.* at 93-95. The Court also found a violation of Rule 8.4 as to the second client, in that "on numerous occasions respondent told [the client's mother] things that were not true: (1) he told her that he was going to file a petition for reverse waiver; and (2) that he was going to visit her son in jail. He performed neither of these activities. His comments were made with the intent to mislead his client and his client's mother." *Id.* at 87 (footnote omitted). This Court did not note any aggravating factors, and noted only one mitigating factor: the absence of prior attorney discipline. *See id.* at 98.

Mr. Sperling's case is less serious in some ways, and equally or more serious in other ways, than *Harris*, *Chanthunya*, and *Mooney*. On one hand, as we have previously noted, Mr. Sperling's misconduct occurred in only one case, not two as in *Harris* and *Chanthunya*, or four as in *Mooney*. Also, Mr. Sperling's inattentiveness was more sporadic compared with the misconduct at issue in these other cases. For example, Mr. Sperling took some steps to attempt to serve Ms. LaPlante earlier in the case, conveyed MAIF's first settlement offer to the clients, and did obtain the medical records that MAIF had requested. In each of these instances, Mr. Sperling ultimately failed to follow through, but we recognize that Mr. Sperling did more to advance his client's interests than did the attorneys

67

in the cases discussed above. Finally, Mr. Sperling's misconduct did not involve dishonesty, unlike *Mooney* (as well as *Singh* and *Thompson*).

On the other hand, Mr. Sperling's errors were serious and compromised Ms. Boyd's and Mr. Bailey's ability to obtain compensation for the injuries they suffered in the car accident. First, Mr. Sperling failed to take further steps to attempt to serve Ms. LaPlante after the court deferred dismissal to allow him to effect service, which led to the dismissal of the lawsuit. Second, Mr. Sperling's failure to convey a settlement offer to his clients was a serious breach of competence, diligence, and communication. In a text exchange in February 2017 between Ms. Boyd and Mr. Sperling, Ms. Boyd told Mr. Sperling: "If I know it was gonna take this long I would had been good with the 500." Mr. Sperling's failure to convey the second offer that MAIF made on April 14, 2017, prevented Ms. Boyd and Mr. Bailey from deciding whether the delay in resolving their case warranted their accepting $750 settlement offers. Third, Mr. Sperling's failure to inform the clients that he had been unable to serve Ms. LaPlante and that, as a result, the case had been dismissed without prejudice, hampered the clients' ability to accurately assess their options at the end of 2017. Finally, Mr. Sperling's lackadaisical approach to obtaining Ms. Boyd's medical records and his failure to provide them to MAIF, or at least to tell Ms. Boyd that he had received the records but not been able to get them to MAIF prior to his suspension, also may have affected the outcome of Ms. Boyd's case. Mr. Sperling obtained the records that MAIF asked to review to assess whether Ms. Boyd's miscarriage may have been related to the accident caused by Ms. LaPlante. Due to Mr. Sperling's inattentiveness, MAIF never received and considered those records. Nor did Ms. Boyd know that the records were in

Mr. Sperling's possession. Had she so known, she might have waited for Mr. Sperling to complete his suspension and maintained him as her counsel (as Ms. Davis did), or she might have taken her file (with her medical records in it) to another attorney and pursued settlement discussions and/or refiled the lawsuit prior to the expiration of the statute of limitations.

Further, Mr. Sperling's two prior disciplinary offenses provide an aggravating factor that was not present in *Chanthunya* and *Mooney*. Although Mr. Sperling's prior disciplinary offenses are not as aggravating as the three prior offenses were in *Harris*, we nevertheless find them significant to our analysis. Notably, the PDRA in the case that resulted in Mr. Sperling's prior suspension was filed in the Circuit Court for Baltimore County, pursuant to our Order, on October 4, 2016. Thus, when Mr. Sperling filed the Boyd/Bailey/Davis lawsuit in the Circuit Court for Baltimore City on January 31, 2017, his prior alleged misconduct involving the Sperling Law Office was in the process of being heard. In addition, shortly after forming his own firm in 2014, Mr. Sperling committed the acts that led to his 2018 reprimand for a conflict of interest and other violations. Shortly after committing those acts of misconduct, Mr. Sperling began his representation of Ms. Boyd and Mr. Bailey. This chronology suggests that Mr. Sperling's transition from working for his father's firm to owning and managing his own firm was problematic. Although we are unaware of any other disciplinary complaints having been filed against Mr. Sperling after Ms. Boyd's and Mr. Bailey's complaints, we harbor continuing concerns about Mr. Sperling's ability to operate a solo practice competently and ethically.

Ultimately, we agree with Mr. Sperling that the totality of the circumstances do not place this case within the "gravitational field" of disbarment and indefinite suspension cases. *AGC v. Brown*, 415 Md. 269, 283 (2010) (Harrell, J., concurring and dissenting). We also believe that Mr. Sperling's case is slightly less serious, overall, than *Harris*. However, we do not believe that either a reprimand, or the type of short suspension Mr. Sperling suggests as a possible alternative to a reprimand, is sufficient to vindicate the interests we seek to promote in imposing a sanction.

In light of all the circumstances present in this case, including the aggravating factors and mitigating factors the hearing judge found, as supplemented in this opinion, we conclude that a 120-day suspension is the appropriate sanction. In addition, we will require that, as a condition of reinstatement, Mr. Sperling employ a practice monitor approved by Bar Counsel for a period of one year.[21]

---

[21] As the prevailing party, the AGC is entitled to costs under Maryland Rule 19-709(a). *See Sperling & Sperling*, 459 Md. at 285-86. We have reviewed the AGC's Statement of Costs and determined that the costs the AGC seeks are "reasonable and necessary." Md. Rule 19-709(a). We decline to order the reimbursement of any costs sought by Mr. Sperling, most notably an expert witness fee of $6,510 for Mr. Bedigian. Mr. Sperling is not the prevailing party in this case. Moreover, as we have held above, the hearing judge did not abuse his discretion in precluding Mr. Bedigian from offering any expert opinions.

70

## III

### Conclusion

For the reasons discussed above, we impose a 120-day suspension on Samuel Sperling for his violations of Rules 1.1, 1.3, 1.4(a) and (b), and 8.4(a) and (d). The suspension shall begin 30 days after the date on which this opinion is filed.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SAMUEL SPERLING.**

Circuit Court for Baltimore County
Case No.: C-03-CV-19-002116
Argued: November 5, 2020

IN THE COURT OF APPEALS

OF MARYLAND

---

Misc. Docket AG No. 6

September Term, 2019

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SAMUEL SPERLING

---

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

---

Dissenting Opinion by Booth, J., which Watts
and Getty, JJ., join

---

Filed: March 1, 2021

Respectfully, I dissent. Although the Majority sustains several of Mr. Sperling's exceptions to the hearing judge's findings of fact and conclusions of law, the Majority nonetheless concludes that Mr. Sperling violated Rules 1.1, 1.3, 1.4, and 8.4(a) and (d) and imposes sanction consisting of a 120-day suspension from the practice of law.

I agree with the Majority's well-reasoned analysis and conclusions concerning Mr. Sperling's exceptions that the Court sustained. However, I would sustain all of Mr. Sperling's exceptions based upon this record and the hearing judge's findings of fact and conclusions of law, which in my estimation, fall short of establishing, by clear and convincing evidence, any violations of the Maryland Attorney's Rules of Professional Conduct. I address below the insufficiency of the evidence related to the various shortcomings attributed to Mr. Sperling's representation of Ms. Boyd and Mr. Bailey in connection with their motor vehicle accident case against the at-fault driver, Lauren LaPlante.

*Failure to Locate a Service Address for Ms. LaPlante*

Based upon this record, I would not find that there is clear and convincing evidence that Mr. Sperling failed to act with competence and diligence in his efforts to locate and serve Ms. LaPlante. The record indicates that Ms. LaPlante had moved at least three times in the two years following the motor vehicle accident. As the Majority correctly observes, it is *undisputed* that Mr. Sterling made numerous attempts in two states to try to serve Ms. LaPlante. These efforts included attempting to serve her by certified mail and employing private process servers in both Maryland and Pennsylvania to attempt personal service. The process servers' affidavits were admitted into evidence, reflecting the several good

faith efforts to find her in both Maryland and in Pennsylvania, including multiple visits to her last known addresses, speaking with neighbors, and conducting additional skip trace efforts to try to locate her. Mr. Sperling testified concerning his continued efforts to locate Ms. LaPlante, including his communications with one of the private process servers, and a second skip trace in an attempt to locate a better address.

In contrast to this undisputed evidence, the hearing judge failed to identify what, if anything else, Mr. Sperling should have done to locate Ms. LaPlante. The hearing judge's determination that the circuit court dismissed the case without prejudice for lack of service under Maryland Rule 2-507(b) does not, on its own, mean that an attorney has not been competent or diligent in attempting to have the defendant served.

Presumably because the hearing judge's factual findings failed to establish, by clear and convincing evidence, what else Mr. Sperling could have done to locate Ms. LaPlante, the Majority supplies its own factual basis—specifically, that Mr. Sperling did not make a written request to the Maryland Automobile Insurance Fund ("MAIF") for Ms. LaPlante's known address pursuant to Courts and Judicial Proceedings Article § 6-311, which would have simply required that the insurance company supply her "last known home and business address *if known*." (Emphasis added). Respectfully, it is not our role to search outside the record for a factual basis upon which to uphold the hearing judge's conclusion when the hearing judge fails to supply sufficient findings of fact.

2

Based upon the undisputed evidence[1] of Mr. Sperling's efforts to locate Ms. Plante, I disagree that such efforts reflected a lack of competence or diligence giving rise to a violation of either Rule 1.1 or 1.3. Moreover, given that Mr. Sperling *ultimately located and served* Ms. LaPlante in connection with Ms. Davis, the third plaintiff who elected to proceed with her lawsuit,[2] such evidence conclusively establishes that Mr. Sperling *was* diligent and persistent in his efforts to locate her.

*The Voice Mail Settlement Offer*

The Majority concludes that Mr. Sperling's failure to convey the second settlement offer to his clients—consisting of a verbal offer of $750 that the MAIF chronology reflects was left on his voicemail—also constitutes a lack of competence and diligence, as well as a lack of communication, in violation of Rules 1.1, 1.3, and 1.4. Once again, the only evidence of the $750 offer was a notation on the MAIF chronology that says a voice mail was left conveying the offer to Mr. Sperling. Mr. Sperling testified at trial that he did not

---

[1] Much of the hearing judge's findings of fact were tied to the MAIF chronology of events. If the "event" was not reflected in an entry on the MAIF chronology, the hearing judge concluded that it didn't happen. For example, Mr. Sperling testified that he asked for Ms. LaPlante's address when he went to the MAIF office on November 20, 2017 to discuss settlement. He testified that a MAIF adjuster gave him a sticky note with the same address that he had all along. However, as the Majority notes, the hearing judge did not find Mr. Sperling's testimony credible because the address inquiry did not make it onto the MAIF chronology. The hearing judge relied on MAIF supervisor, Debbie Friend's testimony that, if Mr. Sperling had requested the address, it would have been on the chronology. However, the testimony at trial also reflected that the chronology was not complete. For example, the record reflected that no demand package had been submitted, when in fact, a demand package had been on file for a year. In my view, an omission on the chronology, without more, cannot plausibly serve as the sole factual basis for concluding that the action did not occur.

[2] Ms. Boyd and Mr. Bailey elected not to proceed with their lawsuit.

3

receive the voice mail. Significantly, MAIF's supervisor, Debbie Friend, testified that she had no idea whether Mr. Sperling ever received the voicemail communicating a $750 offer. Simply put, there is *no evidence in the record*, much less clear and convincing evidence, that Mr. Sperling ever actually received notice of the $750 offer. Based upon this record, I would not find, by clear and convincing evidence, that Mr. Sperling was aware of a voicemail offer that he failed to communicate to his client in violation of Rule 1.1, 1.3 or 1.4.

*Violations Arising from a Failure to Submit Medical Records in Accordance with an Imaginary Deadline*

The Majority concludes that Mr. Sperling violated Rule 1.3 by failing to transmit to MAIF Ms. Boyd's medical records related to her miscarriage. It is undisputed that Mr. Sperling obtained the records and was in the process of reviewing them. The record reflects that there were communications between the MAIF adjuster and Mr. Sperling about obtaining the records in January 2018. Mr. Sperling testified that he tried to determine the medical facilities where Ms. Boyd had received prenatal care, which were not necessarily the same medical facilities where she delivered her child. After communications with Ms. Boyd, and then Jai Medical Center (which advised on March 30, 2018 that the records were in possession of University of Maryland-Midtown Campus) ("UMMC"), Mr. Sperling's office faxed a records request to UMMC for Ms. Boyd's medical records on April 11, 2018. The records were printed at UMMC on April 19, 2018. There is no evidence in the record of when Mr. Sperling received these records. His representation of Ms. Boyd ceased on June 19, 2018.

4

Based upon the above undisputed timeline, I would not find that Mr. Sperling's actions with respect to requesting and handling Ms. Boyd's medical records reflected a lack of diligence. There was no pending case with associated discovery deadlines, or court-ordered deadlines that required the disclosure or production of these medical records by a certain date. There was no evidence presented that the medical records in Mr. Sperling's possession were even responsive to MAIF's request for obstetrics and gynecology medical records. Moreover, at the time when Mr. Sperling ceased his representation of Ms. Boyd on June 19, 2018, the statute of limitations would not run for an additional seven months.

An attorney who is representing his or her client's interests has no obligation to disclose medical records to an insurance company by a certain date or time frame simply because the insurance company has requested them. Mr. Sperling testified that he was in the process of reviewing the records. Oftentimes, medical records are packaged with a settlement demand. There may be records that are not responsive to the injury, which should not be disclosed. An attorney may make strategic decisions as far as how to use the records. I disagree that this Court should find a violation of a professional rule for a failure to produce medical records to an insurance company in connection with a settlement demand where there are no pending deadlines and where an attorney is reviewing records in connection with the preparation of a suitable demand. Specifically, I am concerned that finding a Rule 1.3 violation under the facts of this case will establish a precedent that, to avoid a violation of professional rules, an attorney must act with haste and speed, instead of with deliberation and thought, when assembling medical records in connection with the preparation of a suitable demand.

*Failure to Advise the Clients of the Dismissal Due to Lack of Service*

I do not agree that there is clear and convincing evidence that Mr. Sperling failed to tell his clients that the case had been dismissed without prejudice. First, the hearing judge did *not* find that the Mr. Sperling failed to tell his clients that the case had been dismissed without prejudice. Instead, the hearing judge reached a different conclusion—that Mr. Sperling never advised his client that the court had issued a notice of contemplated dismissal due to a lack of service on the defendant. Assuming that there are facts in the record to support this finding, the Majority concludes that "[i]n and of itself, the lack of client notification of this particular event in the lawsuit did not violate Rule 1.4." Maj. Slip Op. at 37. The Majority further states that, "[i]n our view, it was reasonable for Mr. Sperling not to focus the clients on the notice of contemplated dismissal, given Mr. Sperling's decision to move to defer dismissal and given the circuit court's grant of the motion to defer dismissal." *Id.* at 38.

Instead, the Majority is "troubled" by facts not found by the hearing judge that the Majority extrapolates from its review of the record, stating that "we are troubled by the clients' testimony that they were not aware of the subsequent dismissal of their case due to the failure to serve Ms. LaPlante." *Id.* at 38. Again, it is not this Court's role to scour the record to attempt to supply "clear and convincing evidence" of a factual finding in order to uphold a rule violation where the underlying fact was not made by the hearing judge. Even if I were inclined to undertake this fact-finding role, clear and convincing evidence of such facts are not borne out by this record. First, Mr. Sperling testified that he informed Ms. Boyd and Mr. Bailey of the dismissal and discussed the meaning and significance with

6

them.  In response to questions by Bar Counsel concerning whether Mr. Sperling had told him about the dismissal, Mr. Bailey testified about his understanding that Mr. Sperling was attempting to "*put it back into the Circuit Court*"—suggesting this layperson's understanding that the case had been dismissed.

The testimony of both Mr. Bailey and Ms. Boyd, and the evidence in the record, reflects that they had substantial communication with Mr. Sperling.  However, their testimony also demonstrates that they often lacked a memory of what was discussed or could not remember accurately what was discussed.  Both parties testified concerning the multiple phone calls and texts with Mr. Sperling.  It is clear from the record (including the undisputed testimony of Mr. Sperling, Ms. Boyd, Mr. Bailey, as well as the text messages and phone records that were admitted into evidence) that Mr. Sperling had numerous communications with Mr. Bailey and Ms. Boyd concerning the proposed settlement of their case, the preparation of a demand package, Mr. Sperling's attempts to obtain the medical records, the $500 settlement offer, and the fact that suit had been filed.  After Mr. Sperling advised them that he had been suspended from the practice of law, he gave them names of other lawyers to handle the case, and also advised them of the pending statute of limitations deadline more than six months after he officially concluded his representation.[3]

Despite the undisputed facts and details of these communications, many of which are memorialized in text messages, the hearing judge found that Ms. Boyd did not

---

[3] The fact that Mr. Sperling advised Mr. Bailey and Ms. Boyd of the upcoming statute of limitations supports his testimony that he had advised them of the dismissal.  If the case was ongoing, there would have been no reason for him to remind them of the upcoming deadline.

7

remember Mr. Sperling explaining the legal process that would ensue after he filed the complaint. Similarly, in another instance, the hearing judge found that Ms. Boyd did not remember whether Mr. Sperling explained what actions he would take as her counsel.

In response to questions, Ms. Boyd testified as follows:

Q – Miss Boyd, when you said that you don't remember, do you not remember specifically what was said or do you not remember whether or not the lawsuit was filed on your behalf?

A – I don't remember none of it, what was said or about the lawsuit.

Where a witness testifies that he or she does not remember an event happening, that does not necessarily constitute testimony that the event did not happen. In *Attorney Grievance Commission v. Bear*, 362 Md. 123, 131–32 (2000), we explained the clear and convincing evidence standard in the following terms:

It has been said . . . that the term 'clear and convincing' evidence means that the witness to a fact must be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence.

(Citations and quotations omitted). Based upon my review of the testimony, taken with the internal inconsistencies in the hearing judge's findings of fact, neither Ms. Boyd's nor Mr. Bailey's testimony establishes, by clear and convincing evidence, that they distinctly remember the details of their communications with Mr. Sperling sufficient to demonstrate that Mr. Sperling failed to advise them that the case had been dismissed without prejudice

8

arising from the failure to locate and serve Ms. LaPlante. Accordingly, I would sustain Mr. Sperling's exception to the 1.4 violation in its entirety.

Finally, I would not find a violation of Rule 8.4(a) or 8.4(d).

Given that I would not find that the Commission satisfied its burden of establishing a violation of any professional rule of misconduct here, I would dismiss this action pursuant to Maryland Rule 19-741(c)(1)(E).

For these reasons, I respectfully dissent.

Judge Watts and Judge Getty have authorized me to state that they join in this opinion.